523 S.E.2d 781

**Catherine LITTLEFIELD, Vivian Martin, and Jeremy James, for themselves and all others similarly situated, Appellants,**

v.

**SOUTH CAROLINA FORESTRY COMMISSION, South Carolina Department of Mental Health, both as representatives of all agencies of the State of South Carolina; Richard Eckstrom, in his official capacity as Treasurer of the State of South Carolina, South Carolina Budget and Control Board Division of Human Resources, Respondents.**

No. 25036.

Supreme Court of South Carolina.

Heard Nov. 16, 1999.

Decided Dec. 20, 1999.

Rehearing Denied Jan. 19, 2000.

Armand Derfner, Peter Wilborn, and Ray P. McClain, all of Charleston, for appellants.

Vance J. Bettis, of Gignilliat, Savitz & Bettis; Edwin E. Evans, Office of General Counsel, S.C. Budget and Control Board; and Samuel L. Wilkins, Office of Human Resources, S.C. Budget and Control Board, all of Columbia, for respondents.

WALLER, Justice:

At issue in this appeal is the manner in which state agencies calculate pay for unused annual leave of terminated, deceased, and retiring state employees. The methodology employed by state agencies differs depending upon whether the state employee is terminated, retires, or dies. The circuit court upheld the agencies' methodology, finding no equal protection violation in the disparate treatment accorded different employees. The court also denied employees' motion for class certification. We reverse.

## FACTS

Employees in this case are Catherine Littlefield and Vivian Martin, former employees of the South Carolina Forestry Commission.[1] Littlefield was employed by the Commission from 1973 until May 1996, when she was laid off. In January 1996, Littlefield carried over 324.5 hours of annual leave.[2]

---

1. The circuit court's ruled plaintiff Jeremy James lacks standing as his state employment has not terminated. We concur with this ruling.

2. Pursuant to S.C.Code Ann. § 8–11–610 (1986), employees earn at least 1 and ¼ days annual leave for each month of employment. Such annual leave may be carried over from year to year, not to exceed forty-five days. Because Littlefield worked only 39 hours per week, however, her maximum carryover of accrued leave was 351 hours (or 43.875 days).

Between January and May 1996 (at which time she was terminated), Littlefield earned 97.5 more hours [3] of annual leave. Prior to receiving notification of her termination in 1996, Littlefield used 20 hours of annual leave. Upon her termination, the Forestry Commission deducted the 20 hours leave she took in 1996 from her maximum allowable carryover of 351 hours, and paid her for 331 hours. She claims the 20 hours of annual leave she took prior to her termination in 1996 should not have been deducted from her maximum carryover hours, but should simply have been counted as hours earned and used in her final year of employment.

Martin was employed 40 hours per week by Commission from 1985 until she was laid off in October 1993.[4] In January 1993, she carried forward 45 days (360 hours) of unused annual leave. Between January and October 1993, she earned another 100 hours of annual leave, of which she used 94.5 hours. Upon termination, she was paid 265.5 hours (360 hours minus 94.5 hours = 265.5 hours) of annual leave. She claims she was entitled to be compensated for 360 hours of annual leave, without regard to the 94.5 hours annual leave earned and taken in 1993, prior to her termination.

## ISSUES

1. Does the method of computation used by state agencies in arriving at termination pay violate equal protection?
2. Did the circuit court err in refusing to certify a class action?

## 1. EQUAL PROTECTION

 The method of calculation of termination pay for state employees is set forth in S.C.Code Ann. § 8–11–620, which provides:

Upon termination from state employment, an employee may take both annual leave and a lump-sum payment for

---

3. Littlefield earned 19.5 hours per month pursuant to 23A S.C.Code Ann. Reg. 19–703.08(D)(1976).

4. Martin's position as a fire tower operator in her hometown of York was eliminated. She was offered a position 50 miles away in Spartanburg, which she refused.

unused leave, but in **no event shall such combination exceed forty-five days in a calendar year** except as provided for in § 8–11–610.[5] If an employee dies, his legal representative shall be entitled to a lump-sum payment for his unused leave, not to exceed forty-five working days, except as provided for in § 8–11–610. Upon retirement from state employment or upon the death of an employee, a lump-sum payment will be made for unused leave, not to exceed forty-five days, unless a higher maximum is approved under the provisions of § 8–11–610, and **without regard to the earned leave taken during the calendar year in which the employee retires.**[6] (Emphasis supplied).

State agencies interpret this statute to mean that, if state employment is terminated for reasons **other than death or retirement,** the employee is paid a maximum of 45 days annual leave upon termination, less any amounts of annual leave taken by the employee during the calendar year in which his or her employment terminates. If an employee dies or retires, however, the agencies do not deduct annual leave taken during the final calendar year from the amount carried forward from the previous year.[7]

The net effect of agencies' interpretation is that if an employee is **terminated** (as opposed to dying or retiring), and has used **any** annual leave during the final calendar year of employment, the employee's carryover account from the previous year is reduced by the number of days annual leave used during the year of termination.[8]

---

5. The exceptions provided in section 8–11–610 permit employees prior to 1972 who had more than 45 days annual leave to retain those amounts. The exceptions are not at issue in this appeal.

6. Pursuant to this statute, the office of human resources has enacted 23A S.C.Code Ann. Reg. 19–703.07(1) & (m) which essentially track the language of the statute.

7. Although the statute specifies a maximum of 45 days, agencies state in their brief that they apply this rule uniformly to all terminated employees, without regard to whether they have reached the maximum number of carryover days.

8. The system appears similar to a bank account in which the employee has a checking and a savings account. "Carryover leave" is annually placed into the savings account, and earned monthly leave is deposited

Employees contend that to essentially "dock" them twice for leave used in their final year of employment, while not doing so in the case of retirees and decedents, results in an equal protection violation. We agree.

 To satisfy equal protection, a legislative classification must bear a reasonable relation to the legislative purpose sought to be achieved; members of the class must be treated alike under similar circumstances; and the classification must rest on some rational basis. *Walker v. South Carolina Dep't of Highways and Pub. Transp.*, 320 S.C. 496, 466 S.E.2d 346 (1995). When the Court considers the constitutionality of a statute passed by the General Assembly, it construes the statute so as to render it valid if possible. *University of South Carolina v. Mehlman*, 245 S.C. 180, 139 S.E.2d 771 (1964).

We find no rational basis for the differential treatment accorded terminated employees versus retiring or deceased employees. Initially, contrary to the construction placed upon it by agencies, Section 8–11–620 does **not** state that **decedents'** estates are to be compensated without regard to annual leave taken in the final year of employment; the statute specifically refers only to **retirees** in that regard. Accordingly, there is no rational basis for agencies to treat decedents differently than other terminated employees.

Moreover, we find no rational basis for the agencies' distinction between retirees and non-retirees. In the present case, appellant Littlefield worked for the Forestry Commission for 23 years when she was laid off due to a reduction in force. There is no indication in the record that her termination was in any way volitional, or that, but for the layoff, she would not have reached full retirement. To treat employees who are involuntarily laid off after 23 years of service differently than employees who manage to avoid such a layoff and reach retirement is simply irrational.

---

monthly into the checking account. As leave is used during the year, it is deducted from the checking account. Upon termination, any annual leave hours taken during the final year of employment is also deducted from the amount of total leave then available in the savings account. In essence, the terminated employee is actually "docked" twice for any annual leave used during the final year of employment.

We agree with Employees that agencies' construction of Section 8–11–620 results in an equal protection violation. We find a proper interpretation of Section 8–11–620 simply means that upon **termination,** an employee may not use or be paid for more than 45 days annual leave, but that annual leave which was accrued and used during the final year **prior** to termination may not be deducted from the amounts of annual leave carried forward from the prior year. Such an interpretation of the statute results in no equal protection violation, and renders the statute constitutional. *See University of South Carolina v. Mehlman,* 245 S.C. 180 139 S.E.2d 771 (1964)(when this Court considers the constitutionality of a statute passed by the General Assembly, we construe the statute so as to render it valid if possible). Accordingly, we reverse the circuit court's ruling on this issue.

## 2. CLASS CERTIFICATION

■ The circuit court denied the plaintiffs' motion for class certification for two reasons: 1) the proposed class included current employees who had no justiciable controversy, and 2) it presumed the state would voluntarily comply with any final judgment rendered if plaintiffs prevailed.

As to the first asserted basis for denying certification, although we agree that present employees are not properly included in the class, we see no reason the circuit court could not, as urged by plaintiffs, have redefined the class to include only former employees. *Accord McGann v. Mungo,* 287 S.C. 561, 340 S.E.2d 154 (Ct.App.1986) (circuit court may require plaintiffs to re-plead or redefine alleged class).

As to the second asserted basis, the circuit court ruled the state agencies should be afforded an opportunity to comply voluntarily with any final judgment invalidating their method of calculation of annual leave. The circuit court relied on two federal cases for this proposition. Our state class action rule differs significantly from its federal counterpart. The drafters of Rule 23, South Carolina Rules of Civil Procedure (SCRCP) intentionally omitted from our state rule the additional requirements found in Federal Rule 23(B), Federal Rules of Civil Procedure (FRCP). By omitting the additional require-

ments, Rule 23, SCRCP, endorses a more expansive view of class action availability than its federal counterpart.

Since adoption of Rule 23, SCRCP, this Court has heard many cases that have used the class action procedure to allow adequate representatives to address issues which affect large groups of citizens in our state. *See, e.g., Redmond v. Lexington County School Dist. No. Four,* 314 S.C. 431, 445 S.E.2d 441 (1994); *Brown v. County of Horry,* 308 S.C. 180, 417 S.E.2d 565 (1992); *Payne v. Duke Power Co.,* 304 S.C. 447, 405 S.E.2d 399 (1991); *South Carolina Pub. Serv. Auth. v. Citizens and Southern Nat'l Bank of South Carolina,* 300 S.C. 142, 386 S.E.2d 775 (1989).

We find the current case especially appropriate for class treatment. The number of potential plaintiffs is large, there is one main issue of law which is identical for all plaintiffs, all injuries result from misapplication of the statute by the agencies, and calculation of damages would not be difficult. Accordingly, we find the circuit court abused its discretion in refusing class certification. The judgment below is

**REVERSED.**

FINNEY, C.J., TOAL, MOORE, and BURNETT, JJ., concur.