661 S.E.2d 81

Charles SALMONSEN, individually and on behalf of all others similarly situated, Appellants–Respondents,

v.

CGD, INC., f/k/a Charleston Gypsum Dealers & Supply Co., Inc., Frank Crider, Raymond G. Wolford, Henry (Hank) Futch, and Harold (Hal) Futch, Respondents–Appellants,

v.

Parex, Inc., Respondent–Appellants.

No. 26475.

Supreme Court of South Carolina.

Heard Oct. 17, 2007.

Decided April 28, 2008.

Mary L. Arnold and Justin O'Toole Lucey, both of Mount Pleasant, for Appellants–Respondents.

Joseph E. DaPore, Stephen L. Brown, Russell G. Hines, all of Young, Clement, Rivers, of Charleston; Robert T. Lyles, Jr., of Lyles & Lyles, of Charleston; R. Hawthorne Barrett, Steven W. Ouzts, John E. Cuttino, all of Turner, Padget, Graham & Laney, of Columbia; Steve L. Smith, of Smith, Collins, Newton & Koontz, of Charleston, for Respondents– Appellants.

Justice BEATTY:

This is a direct appeal of a class action suit involving damages arising out of the application of allegedly defective synthetic stucco (Exterior Insulation and Finish System, "EIFS") to Charles Salmonsen's residential home and those homeowners similarly situated in the Charleston area. The Court granted Salmonsen's motion for the appeal to be certified from the Court of Appeals to this Court. The appeal and cross-appeals raise multiple substantive and procedural issues regarding the certification of the class. We dismiss in part, reverse in part, and remand.

## Factual/Procedural History

On October 19, 2000, Salmonsen filed his original Complaint against Parex, Inc. (the stucco manufacturer), Jeff Thomas d/b/a Thomas Construction (the general contractor for the residence), Mike Tenny d/b/a Synco Enterprise (the subcontractor responsible for applying EIFS), and Charleston Gypsum n/k/a CSR America (the distributor). In his Complaint, Salmonsen claimed his residential home sustained water intru-

sion damage resulting from allegedly defective construction materials, particularly the Exterior Insulation and Finish System ("EIFS"). Based on these damages, Salmonsen asserted causes of action for breach of implied warranty, breach of express warranty, negligence, and strict liability. Prior to the scheduled trial date of October 14, 2002, Salmonsen settled and entered into a release with the defendants. In the settlement documents, Salmonsen specifically reserved his claims against CGD, Inc., f/k/a Charleston Gypsum Dealers & Supply Co., Inc.[1]

On October 23, 2002, Salmonsen filed an Amended Complaint on behalf of himself and other similarly situated homeowners, which named CGD, Inc., f/k/a Charleston Gypsum Dealers & Supply Co., Inc. ("CGD"), and each of its former shareholders as defendants. In the Amended Complaint, Salmonsen alleged products liability claims against CGD for breach of implied warranty, negligence, and strict liability. As to the former shareholders, Salmonsen alleged they were personally liable for misconduct associated with the distribution of the corporation's assets.

On February 18, 2003, Salmonsen moved for class certification. In response, CGD filed a memorandum in opposition and a motion to amend its Answer to include third-party defendants who had contributed to the alleged damages of the class of homeowners. After a hearing, Circuit Court Judge Markley Dennis, Jr., issued an order on September 25, 2003, in which he granted Salmonsen's motion to certify the class and denied CGD's motion. In his order, Judge Dennis found that all of the prerequisites for class certification were satisfied pursuant to Rule 23(a) of the South Carolina Rules of Civil Procedure. In addition to these criteria, Judge Dennis also based his decision to certify the class on the ground that there was a limited fund to satisfy the class claims given the

---

1. Charleston Gypsum Dealers and Supply Co., Inc., sold the Parex synthetic stucco that was applied to the exterior of Salmonsen's residence in 1994. On May 15, 1995, Charleston Gypsum sold its business and name to CSR America. Subsequently, Charleston Gypsum changed its name to CGD, Inc. After all known creditors were paid, the sales proceeds were distributed to CGD, Inc.'s shareholders over the next few years. In 1999, the corporation was administratively dissolved.

corporation was dissolved and had only a limited amount of insurance coverage available. Judge Dennis certified the following class:

> All persons and entities that own or have owned structures clad with Parex EIFS sold by the Defendant between January 1, 1991 and May 15, 1995. This class excludes:
>
> a) Employees of the Defendant; and
>
> b) Those persons who have released the Defendant or are currently in litigation with the Defendant.

Subsequently, CGD and the shareholders jointly filed two motions requesting Judge Dennis to reconsider his orders certifying the class and denying the addition of third-party defendants. By orders dated December 15, 2003, Judge Dennis amended the prior order by ruling that the class would be conditionally certified and permitting CGD additional time to conduct class discovery. Judge Dennis also granted CGD leave to amend its Answer to list Parex as a third-party defendant. Pursuant to this ruling, the defendants filed an Amended Answer and a Third–Party Complaint in which they asserted causes of action for indemnity, negligence, negligent misrepresentation, and breach of implied warranties.

On March 22, 2004, Judge Dennis signed a consent scheduling order in which he granted the defendants until May 1, 2004, to file motions to decertify the class. Additionally, he ordered the parties to: (1) complete discovery on or before July 20, 2004; (2) file all motions by August 20, 2004; and (3) complete mediation on or before August 20, 2004. Judge Dennis also informed the parties that the case was subject to being called for trial on or after September 20, 2004.

After conducting discovery, CGD filed a motion on April 30, 2004, to decertify the conditionally-certified class. In its motion and accompanying memorandum, CGD contended that the requirements of Rule 23, SCRCP, were not met and certification was inappropriate because trying the case would involve numerous separate "mini-trials." CGD reasoned that the homeowners were distinct in their claims and, particularly, their damages.

On October 12, 2004, Judge Dennis held a hearing on the motion to decertify the class. Judge Dennis issued a form

order in which he denied the motion and indicated that a formal order would be forthcoming. Prior to the issuance of the formal order, CGD and Parex filed motions to bifurcate the claims of individual class members and, in the alternative, requested a litigation plan for the class action. On January 14, 2005, Circuit Court Judge Roger Young, the Chief Administrative Judge, held a pre-trial conference on these motions. Judge Young removed the case from the trial roster, requested the parties submit proposed trial plans, and assigned the case to himself for all further proceedings.

On February 24, 2005, Judge Dennis issued a formal order explaining his denial of the defendants' motion for decertification. In his order, Judge Dennis reiterated that all of the criteria of Rule 23(a), SCRCP, were met to warrant certification of the class. He also emphasized that "the differences in the claims and damages of these homeowners are not so great that they would weigh against class certification." Additionally, Judge Dennis recognized that "the court faces a continuing duty to ensure that the requirements of Rule 23 remain satisfied. The decision to certify a class is not set in stone; the trial court retains the power to decertify or modify the class at any time prior to final judgment."

On February 25, 2005, Judge Young held a second pre-trial hearing to consider the parties' proposed trial plans and to address the issue of class notification. By order dated May 31, 2005, Judge Young established an "opt-in" notification procedure. In reaching this conclusion, Judge Young found the "opt-in" procedure was "the preferred method of litigating the instant case by serving the interests of the parties and furthering judicial economy." Judge Young further explained that "an opt-in provision is the most pragmatic procedure to facilitate the management of this case. The makeup of this Class should only contain, at most, a narrow group of members, namely the homeowners as identified by sales invoices provided by Defendants." Judge Young declined to establish a trial management plan until after the class had been closed and the class members had been identified. Significantly, Judge Young specifically reserved the "authority to alter, amend, or modify its orders as changes during the course of this case may warrant."

All parties timely appealed the orders of Judge Dennis and Judge Young. Salmonsen appealed Judge Young's May 31, 2005 order establishing the "opt-in" notification procedure. CGD cross-appealed, challenging Judge Dennis's February 17, 2005 order and Judge Young's May 31, 2005 order denying decertification of the class. Parex also cross-appealed challenging Judge Dennis's three orders converting the case into a class action and Judge Young's order permitting the case to continue as a class action.

Although there are multiple issues raised by the parties, we believe this case essentially presents the following questions: (1) whether these appeals are interlocutory?; (2) whether Judge Dennis erred in conditionally certifying the class?; and (3) whether Judge Young erred in converting the class to an "opt-in" class? Accordingly, in the interest of clarity and brevity, we have consolidated some of the issues raised by the parties. Because the question of appealability is a threshold issue in the case, we have chosen to address it first.

## I. Appealability

The substantive differences between the orders at issue necessitates that this Court engage in a bifurcated appealability analysis. Specifically, we must determine whether the class certification orders are immediately appealable and whether the subsequent orders regarding the "opt-in" notification procedure are immediately appealable. For reasons that will be more fully discussed, we dismiss the appeal of the class certification orders and grant the continued review of the "opt-in" orders.

### A.

The general rule established by this Court is that class certification orders are not immediately appealable. *See Eldridge v. City of Greenwood*, 308 S.C. 125, 127, 417 S.E.2d 532, 534 (1992) ("Orders under Rule 23, SCRCP are interlocutory and thus, immediately appealable only in certain circumstances."); *see also Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 565, 564 S.E.2d 94, 98 (2002) ("Usually, an order denying class certification is interlocutory and not immediately appealable."); *Schein v. Lamar*, 274 S.C. 329, 331,

263 S.E.2d 383, 384 (1980) (finding issue of class certification sought to be raised on appeal was interlocutory and appeal regarding that issue was dismissed); *Knowles v. Standard Sav. & Loan Ass'n,* 274 S.C. 58, 59, 261 S.E.2d 49, 49 (1979) (dismissing class certification order as interlocutory on the grounds that "[c]lass certification, essentially procedural in nature, does not involve substantial or essential legal rights which require attention prior to final judgment").

This Court, however, has reviewed interlocutory orders involving class certification when they contain other appealable issues. *Ferguson,* 349 S.C. at 565, 564 S.E.2d at 98; *see Eldridge,* 308 S.C. at 126–28, 417 S.E.2d at 533–34 (finding order prohibiting a plaintiff from contacting potential members of the plaintiff class was in the nature of an injunction and, thus, directly appealable).

■ In its brief, CGD concedes that "[u]nder the present law in South Carolina, all appeals in this matter should be dismissed as interlocutory." Despite this concession, CGD requests to argue against precedent and asks this Court accept review of the appeals because the modern trend in state and federal jurisdictions is to allow review of class certification orders under certain circumstances. CGD believes these appeals present the appropriate circumstances for this Court to accept review. In essence, CGD is urging this Court to amend our state rules of civil procedure to permit interlocutory review of class certification orders or issue an opinion holding these orders fall under the provisions of section 14–3–330(2) of the South Carolina Code,[2] which allows appeal from an interlocutory order when the order affects a "substantial right" and "in effect determines the action and prevents judgment from which an appeal might be taken or discontinues the action."

---

2. Section 14–3–330(2) states:

The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:
(2) An order affecting a substantial right made in an action when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action, (b) grants or refuses a new trial or (c) strikes out an answer or any part thereof or any pleading in any action.
S.C.Code Ann. § 14–3–330(2) (1977 & Supp.2007).

In analyzing this appealability issue, we have, as urged by CGD, reviewed precedent from other state and federal jurisdictions. Although the decisions from these jurisdictions are instructive, we conclude they are distinguishable and do not warrant a decision to review the certification orders in the instant case.

Unlike our state appellate courts, the federal courts have been specifically authorized by Rule 23(f), which became effective on December 1, 1998,[3] to review class certifications prior to a final judgment. Rule 23(f) provides:

> (f) Appeals. A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed.R.Civ.P. 23(f).[4] The Advisory Committee Note to this rule explains: "The court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari ... Permission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive." However, our Fourth Circuit Court of Appeals seems to emphasize that review of interlocutory class certification decisions would not be routine. Instead, the Court has noted that it would employ a "careful and sparing use of Rule 23(f)" to "promote judicial economy by enabling the correction of certain manifestly flawed class certifications prior to trial and final judgment." *Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 145 (4th Cir.2001). Therefore, despite the specific authorization, it appears that federal courts, particularly our Fourth Circuit, are reticent to grant review of interlocutory class certifications orders.

---

**3.** This rule was enacted pursuant to the express authority of 28 U.S.C.A. § 1292 (2007), a statute providing for federal courts of appeal to review interlocutory decisions.

**4.** We note there were changes made to the Federal Rules of Civil Procedure effective December 1, 2007. Because these changes are only intended to be stylistic, these amendments do not affect the issues in this appeal. Accordingly, we cite to the version of Rule 23 which was in effect at the time of the initiation of this litigation.

Similar to the federal courts, the state jurisdictions which have granted immediate appeal of class certification orders are usually authorized by a state rule of civil procedure or a specific statute. *See, e.g.,* Ala.Code § 6–5–642 (2005) (Alabama); Ark. R.App. P. Civ. 2(a)(9) (Arkansas); Colo.Rev.Stat. § 13–20–901 (2006)(Colorado); Conn. Gen.Stat. Ann. § 42–110h (2007) (Connecticut); Fla. R.App. P. 9.130(a)(3)(vi) (Florida); Ga.Code Ann. § 9–11–23(g) (2005)(Georgia); I.C.A. Rule 1.264(3) (Iowa); Kan. Stat. Ann. § 60–223(f) (2005) (Kansas); Mo.Rev.Stat. § 512.020(3) (Supp.2008) (Missouri); N.M.R.A. Rule 1–023(F) (New Mexico); N.D.R.Civ.P Rule 23(d)(3) (North Dakota); Ohio Rev.Code Ann. § 2505.02(B)(5) (2005)(Ohio); Okla. Stat. Ann. tit. 12, § 993(A)(6) (2005) (Oklahoma); Or.Rev.Stat. 19.225 § (2003) (Oregon); Tex. Civ. Prac. & Rem.Code § 51.014(a)(3) (Supp.2007) (Texas); *see generally* Gary D. Spivey, Annotation, *Appealability of Order Denying Right to Proceed in Form of Class Action,* 54 A.L.R.3d 595 (1973 & Supp.2008) (discussing state appellate decisions regarding the appealability of orders denying the right to proceed in the form of a class action).

In the absence of a rule or statute, several state appellate courts have granted immediate review. *See, e.g., Indiana Bus. Coll. v. Hollowell,* 818 N.E.2d 943, 945 (Ind.Ct.App.2004) (granting review of interlocutory appeal of class certification decision); *Dunn v. State,* 179 N.C.App. 753, 635 S.E.2d 604, 606 (2006)(holding interlocutory appeal of class certification order was directly appealable because it involved " 'a matter of law or legal inference that affect[ed] a substantial right of the appellant' " (quoting *Frost v. Mazda Motor of Am., Inc.,* 353 N.C. 188, 540 S.E.2d 324, 327 (2000))); *Mitchem v. Melton,* 167 W.Va. 21, 277 S.E.2d 895, 900–01 (1981) (holding order denying class action standing was immediately appealable); *but see Gordon v. Microsoft Corp.,* 645 N.W.2d 393, 402–03 (Minn.2002) (adopting "synthesis" of federal jurisprudence regarding immediate appeal of class certification orders and affirming court of appeals decision denying immediate review of class certification order); *Basile v. H & R Block, Inc.,* 926 A.2d 493, 498 (Pa.Super.Ct.2007) (holding interlocutory orders granting class certification become reviewable on appeal upon the trial courts entry of a final order).

■ Although the absence of a specific state rule or statute is not dispositive of our decision as to the appealability of class certification orders, it presents a greater obstacle for this Court to grant review of the appealed orders.[5] Because a decision by this Court to grant immediate appellate review of a class certification order would represent a significant departure from this states established appealability jurisprudence, we decline to do so. We reiterate that the orders do not prevent a judgment from which an appeal may be taken nor do they discontinue the action.

## B.

■ We reach a different conclusion regarding the appeal of the orders establishing the "opt-in" notification procedure. Although Salmonsen concedes that an order granting or denying class certification is typically treated as an interlocutory appeal by the appellate courts of this state, he contends that his appeal from Judge Young's order establishing the "opt-in" notification procedure is properly before this Court because it affects a substantial right of class members and the mode of trial. Specifically, Salmonsen asserts the ruling of Judge Young "is a death knell for a number of class members' claims because they will no longer be class members due to the inhibitions created by changing the matters to an opt-in class." [6] We agree with Salmonsen that these orders affect a mode of trial and, thus, are immediately appealable. Moreover, this issue presents a novel question of law which should be addressed at this time in the interest of judicial economy and guidance to the bench and bar.

■ "Pursuant to § 14–3–330(2), this Court has held on numerous occasions that when a trial courts order deprives a party of a mode of trial to which it is entitled to as a matter of right, such order is immediately appealable." *Flagstar Corp.*

---

5. "Although we will not generally accept matters on a writ of certiorari that can be entertained in the trial court or on appeal, a writ of certiorari may be issued when exceptional circumstances exist." *In re Breast Implant Prod. Liab. Litig.,* 331 S.C. 540, 543 n. 2, 503 S.E.2d 445, 447 n. 2 (1998).

6. At oral argument CGD agreed that the "opt-in" procedure affected the mode of trial.

*v. Royal Surplus Lines,* 341 S.C. 68, 72, 533 S.E.2d 331, 333 (2000). "These cases not only permit, but indeed require, immediate appeal in the event of the denial of a mode of trial to which one is entitled as a matter of right." *Id.* This Courts traditional analysis of claims of denial of a mode of trial requires a determination of whether or not a party is erroneously denied a trial by jury in a law case, or is erroneously required to proceed before a jury in an equity case. *Id.* However, the mode of trial analysis indubitably includes the consideration of the availability of trial. The question of the denial of an actual trial is intrinsic. Here, all parties argue that some of the claims of putative class members are barred or would be barred by the statute of limitations if the "opt-in" procedure is used.

As originally certified by Judge Dennis, the class included "All persons and entities that own or have owned structures clad with Parex EIFS sold by the Defendant between January 1, 1991 and May 15, 1995." By converting this inclusive class to an "opt-in" class, Judge Youngs order had the deleterious effect of improperly excluding individuals who should be members of the class. Although the class has not been decertified by the trial judge, the adoption of this notification procedure essentially created a class action anomaly. *See Citgo Ref. & Mktg., Inc. v. Garza,* 94 S.W.3d 322, 328 (Tex.App.2002) (stating "an order changing the characterization of a class from opt-out to mandatory fundamentally alters the nature of the class and therefore is immediately appealable").

## II.  Propriety of "Opt-in" Notification

Having dismissed the appeal from Judge Denniss class certification orders, we confine our analysis to a review of Judge Youngs decision establishing an "opt-in" notice procedure for putative class members.

■  Salmonsen challenges Judge Youngs ruling on procedural as well as substantive grounds. First, Salmonsen contends that Judge Youngs decision effectively overruled Judge Denniss prior rulings regarding scheduling of the trial and the class certification. Secondly, Salmonsen asserts that an "opt-in" notice requirement is not recognized in this state and, in the alternative, is not appropriate for this class action suit.

■ Although Salmonsen is correct that one circuit court judge may not overrule another, we find this rule was not violated in the instant case. *See Enoree Baptist Church v. Fletcher*, 287 S.C. 602, 604, 340 S.E.2d 546, 547 (1986) ("One Circuit Court Judge does not have the authority to set aside the order of another.").

Rules 23(d)(1) and (2) of the South Carolina Rules of Civil Procedure specifically permit the trial court to maintain continual control over class action proceedings, including the method of class notification. Because Judge Young was the Chief Administrative Judge, who was ultimately assigned to the case, he was authorized to issue orders governing the trial proceedings which included scheduling decisions as well as the method of notification. *See* Rule 40(e)(2), SCRCP (permitting scheduling orders to be amended by subsequent Chief Administrative Judge). Significantly, Judge Dennis never ruled on the method of class notification nor did he designate the action as an "opt-out" class action. Moreover, class certification may be altered at any time prior to a decision on the merits.[7] Therefore, we find Judge Young properly exercised his discretion and did not overrule any prior decisions of Judge Dennis.

As to the merits of Salmonsens issue, we believe, for reasons that will be more fully discussed, that the "opt-out" notification procedure is appropriate and should be used in this case and future class action suits.

To analyze this issue, it is instructive to compare Rule 23(d)(2) of the South Carolina Rules of Civil Procedure with its federal counterpart, Rule 23(c)(2). In doing so, we are cognizant that our appellate decisions have relied on federal precedent with respect to class action cases, but have also noted the significant differences between the two rules. *See Littlefield v. South Carolina Forestry Commn.*, 337 S.C. 348, 354, 523 S.E.2d 781, 784 (1999) ("Our state class action rule differs significantly from its federal counterpart. The drafters of Rule 23, South Carolina Rules of Civil Procedure (SCRCP) intentionally omitted from our state rule the additional requirements found in Federal Rule 23(B), Federal Rules of Civil Procedure (FRCP). By omitting the additional require-

---

7. It should be noted that Judge Young's order did not decertify the class; however, it did designate it as an "opt-in" class action.

ments, Rule 23, SCRCP, endorses a more expansive view of class action availability than its federal counterpart."); *McGann v. Mungo*, 287 S.C. 561, 570, 340 S.E.2d 154, 159 (Ct.App.1986) (relying on federal precedent to interpret new Rule 23 of the South Carolina Rules of Civil Procedure).

Rule 23(d)(2) of the South Carolina Rules of Civil Procedure states:

> In the conduct of actions to which this rule applies, the court may make appropriate orders: ... (2) The court may at any time impose such terms as shall fairly and adequately protect the interest of the persons on whose behalf the action is brought or defended. It *may order* that notice be given in such a manner as it may direct of the pendency of the action by the party seeking to maintain the action on behalf of the class. It *may order* that notice be given in such manner as it may direct of a proposed settlement, of entry of judgment, or any other proceedings in the action including notice to the absent persons that they may come in and present claims and defenses if they so desire.

Rule 23(d)(2), SCRCP (emphasis added).

In comparison, Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure provides:

> For any class certified under Rule 23(b)(3), the court *must* direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice *must* concisely and clearly state in plain, easily understood language: the nature of the action, the definition of the class certified, the class claims, issues, or defenses, that a class member may enter an appearance through counsel if the member so desires, that the court *will exclude* from the class any member who requests exclusion, stating when and how members *may elect to be excluded,* and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. Pro. 23(c)(2)(B) (emphasis added).

As evidenced from the emphasized text, our state rule provides a trial court with broader discretion to make decisions regarding class notification procedures than the federal rule. Notably, in defining a trial courts authority our state

rule uses the term "may" whereas the federal rule uses the mandatory term "must." Even more significant, the federal rule specifically mandates that class members will only be excluded from the class if the member so requests, *i.e.,* an "opt-out" procedure. Our research has revealed only two types of federal class action cases where the federal courts permit an "opt-in" procedure. *See Wagner v. Loews Theatres, Inc.,* 76 F.R.D. 23, 24 (M.D.N.C.1977) (recognizing that class action suits pursuant to the Fair Labor Standards Act and the Age Discrimination in Employment Act provide for statutory "opt-in" class action); *Watkins v. Milliken & Co.,* 613 F.Supp. 408, 418 (W.D.N.C.1984) (noting that Rule 23(c) of the Federal Rules of Civil Procedure provides for "opt-out" class action whereas the Fair Labor Standards Act allows as class members only those who "opt in").

In contrast, our state rule has no similar provision. Nor has this court specifically spoken on the issue. Therefore, Judge Young had no guidance in determining the appropriate notification method.

As explained by Professor Flanagan:

Rule 23(d) is not exhaustive. The court has inherent power to manage the class action and may enter any appropriate order. One important issue not covered by the rule is the procedure for determining who is bound by a class action. Federal Rule 23 allows only those who are members of a Rule 23(b)(3) class action in which common questions predominate, the option of electing not to be bound by the class action. Class members must be notified of this right and must affirmatively elect not to be bound. Members of a Rule 23(b)(1) or (b)(2) class actions are not given the option of staying out of the class action.

The South Carolina Rule leaves to the courts discretion the method of determining how class members elect to be bound. In some actions, particularly those involving only injunctive relief, no procedure may be necessary. In other cases, where common questions predominate, the court may use the federal approach of binding the members unless they opt-out, or alternately requiring an affirmative election to be bound.

Flanagan, James F., South Carolina Civil Procedure 192–93 (2d ed.1996).

Despite the implicit permission in the rule for an "opt-in" notification procedure, our appellate courts have not recognized this method and have clearly expressed a preference for the "opt-out" procedure. For example, this Court has stated:

Thus, in order to provide minimal due process, absent class plaintiffs:

must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections".... The notice should describe the action and the plaintiffs rights in it. Additionally, ... due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

Id. at 812, 105 S.Ct. 2965 (citations omitted). If the due process requirements of (1) notice; (2) an opportunity to be heard; (3) an opportunity to "opt out;" and (4) adequate representation are met, the foreign court properly asserts personal jurisdiction over the absent class plaintiffs. Accordingly, those plaintiffs who elect not to opt out are bound by the foreign courts judgment.

*Hospitality Mgmt. Assocs. v. Shell Oil Co.,* 356 S.C. 644, 654, 591 S.E.2d 611, 616 (2004) (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)) (discussing extent of collateral review of due process safeguards for absent class members to a class action settlement in foreign jurisdiction).[8]

---

8. Interestingly, the dissent concurred without opinion in *Hospitality Management Associates.* As evident from the above-quoted language, the unanimous Court unequivocally approved of the "opt-out" procedure as the preferred procedure and clearly indicated that this procedure comports with the requirements of due process. Thus, we are

458

■ Moreover, this Court has stated, "South Carolina Rule of Civil Procedure 23(d)(2) gives the circuit court the broad power to 'impose such terms as shall fairly and adequately protect the interest of the persons on whose behalf the action is brought or defended.'" *Eldridge v. City of Greenwood*, 308 S.C. 125, 127, 417 S.E.2d 532, 534 (1992) (quoting Rule 23(d)(2), SCRCP). "The power to issue an order which the court, in its discretion, believes is necessary to curtail the opportunities for abuse of the judicial system in class actions is not without bounds." *Eldridge*, 308 S.C. at 127, 417 S.E.2d at 534. "The specific grants of power in Rule 23(d), SCRCP are directed towards notifying the absent parties of the pending litigation." *Id.* The discretion granted by Rule 23(d)(2) to determine how absent *parties* are notified of a pending action does not include the discretion to determine if a member of the class will be a party to the action. It is inherent in class-action litigation that every member of the class is a party. The remaining question is whether or not each party will present a claim or a defense.

■ In our view, the "opt-in" procedure is not contemplated by the notice provision of Rule 23. The "opt-in" procedure is more far reaching than simply notifying putative class members of the pending action. It also determines the class and may even re-define it. Moreover, we believe the elimination of the putative class members effectively denies those individuals a trial by jury.

Furthermore, we believe the implementation of the "opt-in" procedure effectively converts the previously certified class action into an ersatz form of permissive joinder under Rule 20 of the South Carolina Rules of Civil Procedure.[9] To do so

---

perplexed by the dissent given it represents a fundamental reversal on this issue.

Furthermore, the dissent's reference to *Tilley v. Pacesetter Corp.*, 355 S.C. 361, 585 S.E.2d 292 (2003), is unavailing. In *Tilley*, this Court approved of the trial court's delaying the *actual mailing* of the class notice until after certain issues were resolved on appeal. This decision had absolutely nothing to do with "opt-in" class actions.

9. Rule 20 provides in relevant part:

a)Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction,

eviscerates Rule 23 class actions. Rule 23 specifically requires that the court find, before certifying the class, that the class is so numerous that joinder is impracticable. Thus, Rule 20 joinder and Rule 23 class actions should not co-exist.

The careful reading of Rules 20 and 23 together leads to the conclusion that "opt—in" class actions should not be allowed. This prohibition cannot be avoided by use of an "opt-in" notice procedure. The "opt-in" class action and the "opt-in" notice procedure are a distinction in name only, the practical effect is the same.

After much consideration, we come to the conclusion that an "opt-out" notification procedure is the proper method to be offered to putative class members in the instant case and future class action cases. We further take this opportunity to specifically reject the use of an "opt-in" procedure. Taken to its logical extreme, the "opt-in" procedure undermines the due process reasoning of Rule 23 and essentially amounts to *de facto* decertification of a class.

Specifically, as the text of Rule 23(d)(2) states, a court in managing a class action suit should issue orders that "fairly and adequately protect the interest of the persons on whose behalf the action is brought or defended." By implementing an "opt-in" procedure, we believe a court is making misperceived judicial economy paramount to the interests of putative class members. For example, if, as in the instant case, limited insurance funds are available to cover claims, potential class members who do not participate in the class would not be compensated because the limited funds may be exhausted in the action. Furthermore, potential members of the class may

---

occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.
Rule 20(a), SCRCP.

be precluded from bringing their claims due to statute of limitation problems. Because class action litigation is intended to effectively litigate a large number of claims through a representative party, a requirement that parties "opt-in" will undoubtedly limit the size of the class and, therefore, undermines the purpose of a class action suit.[10]

Although we recognize that class action suits are complex and laborious for all involved parties, this fact alone is not sufficient to utilize a notification procedure that effectively eviscerates class action status. Accordingly, we hold Judge Young erred in ordering an "opt-in" notification procedure.

## CONCLUSION

Based on the foregoing, we dismiss the appeals of Judge Denniss class certification orders as interlocutory. Because we adopt the "opt-out" class action and notification procedure as the exclusive method of class action litigation in this state, we reverse Judge Youngs order and remand for further proceedings consistent with this opinion.

**DISMISSED IN PART, REVERSED IN PART, AND REMANDED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

---

**10.** One commentator has explained the negative effects of an "opt-in" procedure as follows:

> [T]he opt-in procedure is ... a very effective means of diminishing the size of a class, because an affirmative act by an individual is always less likely than mere inaction and hence presents certain dangers. Requiring class members to insert themselves into the suit will result inevitably in smaller classes, unrelated to the magnitude of the harm done or the merits of the case. In addition to its unfairness, unnecessary reduction of class size negates the perceived benefits of class actions as efficient and economic means of litigation, since those who fail to opt in could bring their own suits, thereby multiplying cases where one would do.

Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1202 n. 19 (11th Cir.1985) (quoting Note, Reforming Federal Class Action Procedure: An Analysis of the Justice Department Proposal, 16 Harv.J.Legis. 543, 571–72 (1979)).

Justice PLEICONES:

I respectfully dissent. The majority holds that the circuit court's interlocutory order utilizing the "opt-in" class certification procedure is immediately appealable under S.C.Code Ann. § 14–3–330(2) (1976) because it is an order affecting the mode of trial. I disagree: the "mode of trial" exception to the general rule that only final orders are appealable is confined to orders which abridge a party's constitutional right to trial by jury. *E.g., Flagstar Corp. v. Royal Surplus Lines,* 341 S.C. 68, 533 S.E.2d 331 (2000); *Pelfrey v. Bank of Greer,* 270 S.C. 691, 244 S.E.2d 315 (1978). I would therefore dismiss both appeals. *Knowles v. Standard Savings and Loan Ass'n.,* 274 S.C. 58, 261 S.E.2d 49 (1979) (dismissing an interlocutory appeal from a class certification order holding such an order "does not involve substantial or essential legal rights which require attention prior to final judgment").

Although the issue is not properly before us, I note my disagreement with the majority's decision on the merits as well as with its procedural ruling. Without question, the circuit court has discretion to create an "opt-in" class under Rule 23(d), SCRCP, and while we have never directly addressed the propriety of the "opt-in" class, we have never disapproved of the procedure. *See Tilley v. Pacesetter Corp.,* 355 S.C. 361, 585 S.E.2d 292 (2003) (approving timing of notice to persons eligible to join the class). Moreover, I am at a loss to understand the majority's holding that an "opt-in" class somehow runs afoul of Rule 20(a), SCRCP, the permissive joinder provision. The first prerequisite for class certification is a finding that the class is so numerous that joinder is not practicable. Assuming that criterion is satisfied, whether the class proceeds as "opt-in" or "opt-out," each potential class member has the right to determine whether to participate in the law suit, and thus the same "ersatz" joinder problem exists under either scenario.

None of the interlocutory orders sought to be appealed are immediately appealable under § 14–3–330. I would dismiss the cross-appeals.