JUSTICE FEW:
This is a direct appeal from an action at law.[12] The Constitution of South Carolina sets forth the jurisdiction of the Supreme Court in such a case: “The Supreme Court shall constitute a court for the correction of errors at law under such regulations as the General Assembly may prescribe.” S.C. Const. art. V, § 5. See Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976) (“Article V, § 5 of our Constitution ... sets forth the jurisdiction of this Court.”). Under article V, section 5, the Supreme Court has no *187 power in this case except to correct errors of law made by the trial court. See In re Care & Treatment of Gonzalez, 409 S.C. 621, 628, 763 S.E.2d 210, 213 (2014) (stating in an appeal from a jury verdict in an SVP trial, “the jurisdiction of the appellate court extends merely to the correction of errors of law”); Lozada v. S.C. Law Enf't Div., 395 S.C. 509, 512, 719 S.E.2d 258, 259 (2011) (“When reviewing an action at law, our scope of review is limited to the' correction of errors of law.”); Townes Assocs., 266 S.C. at 85, 221 S.E.2d at 775 (“In an action at law, on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the correction of errors of law....”).
The majority opinion recites this limitation on our power— citing Gonzalez—but then ignores its own words and projects this Court beyond our constitutional 'jurisdiction by writing procedural and substantive rules of law that have nothing to do with any error of law made by the trial court. These new rules do not concern the trial court’s handling of this SVP trial, nor do they govern how a future trial court will conduct an SVP trial. Rather, these new rules establish a procedural and substantive scheme for resolving a completely different category of lawsuits that have never been filed. The majority’s new rules to govern these future lawsuits violate the limits on our power set forth in article V, section 5 as interpreted by this Court in Gonzalez, Lozada, and Townes Associates, and because of that, the new rules also violate the separation of powers requirement set forth in article I, section 8 of the Constitution of South Carolina.
It requires no justification for a court to honor the constitutional limitation on judicial power—it is the law. In this case, however, the justification is clear. First, the only procedural and substantive framework in South Carolina—until now—to protect a litigant’s right to effective counsel is the South Carolina Uniform Post-Conviction Relief Act enacted by our Legislature. See S.C. Code Ann. §§ 17-27-10 to -160 (2014); see also 28 U.S.C. § 2255 (2016) (Federal custody; remedies on motion attacking sentence). Second, this Court has previously held, “The purpose of habeas corpus is to test the legality of the prisoner’s present detention,” and, “The only remedy that can be granted is release from custody.” Gibson v. State, 329 S.C. 37, 40, 495 S.E.2d 426, 427 (1998) (citing McCall v. State, 247 S.C. 15, 18, 145 S.E.2d 419, 419 (1965)). Under Gibson and *188 McCall, the only remedy available for a finding of ineffective counsel would be to release from custody a person found by a jury to be a sexually violent predator—because the courts do not have the power to grant a new trial.[13] Third, the majority’s provision that the court must appoint—and the State must pay—counsel to represent the SVP in the effective counsel proceeding violates section 14-1-235 of the South Carolina Code (2017), which provides, “A judge, court, or court official shall not appoint an attorney to represent a party in a civil action unless the authority to make the appointment is provided specifically by statute.”
Finally, creating a procedural and substantive scheme for future litigation of effectiveness of counsel in an SVP trial is particularly inappropriate for judicial action. To illustrate this point, I pose a few questions. First, is there any difference between the majority’s new scheme and the annual review proceedings provided in section 44-48-110 of the South Carolina Code (Supp. 2016)? If not—or if the difference is only slight—can the right of effective counsel in the initial commitment proceeding reach the constitutional dimension on which the majority relies? Second, does an SVP—by filing a petition for habeas corpus claiming ineffective counsel—waive his right to pursue annual review proceedings, or must the circuit court simultaneously conduct annual review proceedings and effective counsel proceedings?[14] Third, if the circuit court in annual review proceedings finds no “probable cause exists to believe *189 that the person’s mental abnormality or personality disorder has [sufficiently] changed,” would that finding moot any ongoing effective counsel proceedings by making a different outcome not reasonably likely under the second prong of Strickland![15] Fourth, if the circuit court must conduct simultaneous proceedings, is the counsel to be appointed pursuant to the majority opinion permitted to be—or required to be—the same counsel the SVP is entitled to in annual review proceedings pursuant to section 44-48-110?[16] Finally, there are other civil commitment proceedings as to which the committed person has a statutory right to counsel. See S.C. Code Ann. §§ 44-17-310 to -900 (2002 & Supp. 2016) (Care and Commitment of Mentally Ill Persons Act); § 44-17-530 (2002) (providing “the court shall appoint counsel to represent the person” subject to judicial commitment proceedings). Does the majority’s new scheme apply to those committed persons as well?
Some of these questions may be invalid, and never need to be answered, but some of them are valid, and demand an *190 answer. Whether these questions deserve answers—and if so what are the answers—are inquiries that courts are uniquely unqualified to complete. The Legislature, on the other hand, has numerous tools at its disposal to adequately address these and other problems. All of this forces the question of why this Court should create this new effective counsel scheme, especially when the annual review procedure is already in place pursuant to statute. See § 44-48-110. Respectfully, the majority has not answered any of these questions.
The majority suggests in footnote eleven that I do not understand this Court’s duty to “ensur[e] that the law comports with all constitutional requirements.” I am satisfied that I do understand this duty, and further that I understand we must exercise that duty within the constitutional limitations on our power. To respond to the majority’s suggestion, I will explain how—and when—I think this Court should fulfill its duty to protect the constitutional rights of Chapman and other SVP litigants who claim they have been denied due process because they received ineffective assistance of counsel.
To begin, this Court has never heard an appeal from a circuit court’s ruling as to whether an SVP defendant received effective assistance from his attorney. The trial court made no such ruling in this case. In fact, I am not aware that any SVP defendant has ever brought such a claim in any South Carolina circuit court. If an SVP brings such a claim, the first issue the circuit court will face is whether the SVP’s right to annual review adequately protects the SVP’s due process rights regarding the effectiveness of his counsel. No court— anywhere—not even the courts from other states cited by the majority—has ever answered that question.
If the circuit court in which the claim is brought addresses the SVP’s claim, and if the aggrieved party appeals, this Court will then be required to determine whether the circuit court committed any errors of law. Then—when the questions that the majority answers in the abstract are actually contested issues in an appeal before us—we will fulfill our duty to protect the due process rights of SVP litigants, and our responsibility under article V, section 5, by determining whether the trial court committed any errors of law. Until then, we act outside of our constitutional authority if we write *191 rules not necessary to resolve the actual case before us, even though the rules may relate to the constitutional requirement of due process.
My disagreement with the majority is not based on a misunderstanding of our duty to protect the due process rights of our citizens. Rather, my disagreement derives from my resolve to obey the constitutional limitations on our power. As the majority recognizes, “none of [Chapman’s] ineffective assistance claims are preserved for review.” Under this circumstance, we should affirm without any comment on rules to govern future disputes. Because I believe the law written by the majority in this case goes beyond the constitutional limits on this Court’s power and falls within the exclusive province of the Legislature, I respectfully dissent.

, The majority states in its first paragraph this is a "direct appeal.” We have previously held an SVP trial is an action at law. In re Treatment & Care of Luckabaugh, 351 S.C. 122, 131, 568 S.E.2d 338, 342 (2002).

. In this event it is questionable that SVP proceedings may be reinsti-tuted. The timetable for instituting such proceedings begins long before the person is released from confinement on the original sentence, which will necessarily have passed by the time a circuit court grants habeas corpus. See S.C. Code Ann. § 44-48-40(A)(l) (Supp. 2016) (requiring the multidisciplinary team be given "written notice ... at least two hundred seventy days before” release); S.C. Code Ann. § 44-48-50 (Supp. 2016) (stating the timetable for "forward[ing] a report of the assessment to the prosecutor's review committee” is "within thirty days” of the notice in subsection 44-48-40(A)(l)); S.C. Code Ann. § 44-48-60 (Supp. 2016) (requiring the review committee to determine probable cause "within thirty days of receiving the report”); S.C. Code Ann. § 44-48-70 (Supp. 2016) (requiring the Attorney General to file the petition for SVP confinement “within thirty days of the probable cause determination”). There is no provision in the SVP Act permitting retrial after release from confinement.

. Section 44-48-110 requires,
*189 A person committed pursuant to this chapter must have an examination of his mental condition performed once every year. ... The annual report must be provided to the court which committed the person.... The court must conduct an annual hearing to review the status of the committed person. ... If the court determines that probable cause exists to believe that the person’s mental abnormality or personality disorder has so changed that the person is safe to be at large and, if released, is not likely to commit acts of sexual violence, the court must schedule a trial on the issue.
Id. (emphasis added).

. How could a circuit court find prejudice under Strickland if the same or another circuit judge has already found in an annual review proceeding that no probable cause exists to believe the SVP is "safe to be at large?” Further, if the judge in the effective counsel proceeding is a different judge and the annual review judge found no probable cause, is the second judge bound by the rule that “one circuit court judge may not overrule another?” Salmonsen v. CGD, Inc., 377 S.C. 442, 454, 661 S.E.2d 81, 88 (2008). Conversely, if the effective counsel trial occurs first and the circuit court finds prejudice,' which surely moots the probable cause hearing in the annual review proceedings, would the prospect of an annual review trial then moot any appeal from the effective counsel trial?

. "The committed person has a right to have an attorney represent him at the [annual review probable cause] hearing ...,” and, "At the trial, the committed person is .,, entitled to the benefit of all constitutional protections [i.e„ counsel].” § 44-48-110.