23765

The STATE, Respondent v. Linda Sue SQUIRES, Appellant.

(426 S. E. (2d) 738)

Supreme Court

*Michael G. Nettles*, of *Nettles, Turbeville and Reddick*, Lake City, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Harold M. Coombs, Jr.*, and *Staff Atty. Alexandria Broughton Skinner*, Columbia, and *Dudley Saleeby, Jr., Sol., Twelfth Judicial Circuit*, Florence, *for respondent.*

Heard Dec. 8, 1992.

Decided Dec. 21, 1992.

HARWELL, Chief Justice:

We are asked to decide whether infrared spectroscopy constitutes a "chemical test" as contemplated by the implied consent statute, S.C. Code Ann. § 56-5-2950 (1991). We conclude that it does, and, in so doing, affirm appellant Linda Sue Squires's conviction for driving under the influence.

## I. FACTS

Early in the morning of December 1, 1991, a highway patrolman observed Squires driving erratically on a public roadway. He stopped Squires and asked her to perform a field sobriety test. After Squires failed the test, the highway patrolman placed her under arrest for driving under the influence.

Squires was transported to Lake City where she was given the opportunity to have her breath tested for the presence of alcohol on a DataMaster machine, an infrared breath testing

device. Squires failed to give an adequate breath sample, and the DataMaster recorded the event as a refusal by Squires to take the breath test.

Squires went to trial, where a jury convicted her of driving under the influence, first offense.

## II. DISCUSSION

Squires asserts that testimony regarding her alleged refusal to submit a breath sample should have been excluded because the DataMaster is not a "chemical test" as mandated by S.C. Code Ann. § 56-5-2950(a) (1991).

Section 56-5-2950(a) provides in part:

> Any person who operates a motor vehicle in this State is considered to have given consent to *chemical tests* of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs if arrested for any offense arising out of acts alleged to have been committed while the person was operating a motor vehicle while under the influence of alcohol, drugs, or a combination of them. . . . (emphasis added)

According to Squires, the term "chemical tests" should be read to include only those situations where chemicals are used to analyze breath for the presence of alcohol. We disagree.

At the time section 56-5-2950 was enacted, law enforcement officials were employing the Breathalyzer machine to test for alcohol in the breath of persons charged with driving under the influence. The Breathalyzer operates by conducting a known quantity of end-expiratory breath into a deep yellow solution of potassium dichromate in sulfuric acid contained within an open test ampoule. The solution also contains a catalyst, silver nitrate. The alcohol reacts with and consumes potassium dichromate, resulting in a loss of yellow color in proportion to the amount of alcohol in the sample. The percentage of alcohol in the breath is estimated by comparing the intensity of the color in the test ampoule with other ampoules containing varying percentages of potassium dichromate in sulfuric acid. The measured alcohol in the breath is then translated to a percentage of alcohol in the blood. 2 R. Erwin, *Defense of Drunk Driving Cases*, § 22.02(1) (1992) (hereinafter Erwin). Clearly, the Breathalyzer relies on principles of chem-

istry, and thus, Squires urges, is the kind of "chemical test" envisioned by the Legislature.

The DataMaster device differs from the Breathalyzer in that it does not use chemicals to test breath for the presence of alcohol. Rather, the DataMaster relies on principles of infrared absorption derived from the Beer-Lampert Law of Absorption. According to this law, molecules selectively ab-sorb infrared energy. Alcohol absorbs infrared energy with a wave length of approximately 3.4 microns. An operator using a DataMaster or similar device introduces the breath sample to be analyzed into a chamber through which an infrared beam of 3.4 microns is passed. The decrease in energy transmitted is proportional to the presence of alcohol in the breath sample. The DataMaster then electronically converts the decrease in energy into a percent alcohol content reading. Erwin, §§ 18.09(a), 20.09; *see also People v. Jones,* 118 Misc. (2d) 687, 461 N.Y.S. (2d) 962 (1983); *City of Dayton v. Schenck,* 63 Ohio Misc. 14, 409 N.E. (2d) 284 (1980) (containing detailed discussions of infrared analysis). Thus, the DataMaster relies on principles of physics, rather than chemistry.

We turn to the question of whether infrared spectroscopy, as the process utilized by the DataMaster is called, qualifies as a "chemical test" within the meaning of section 56-5-2950. Our primary function in interpreting a statute is to ascertain the intent of the Legislature. *Browning v. Hartvigsen,* — S.C. —, 414 S.E. (2d) 115 (1992). In doing so, we must give consideration to the object which the Legislature sought to attain and the evil which it endeavored to remedy. *Woodward v. State Rural Electrification Auth.,* 190 S.C. 465, 3 S.E. (2d) 539 (1939). In our view, the Legislature did not intend to limit the definition of "chemical tests" to include only those methods that employ chemical reactions to determine the presence of alcohol in the breath. Such a restrictive reading of "chemical tests" would undermine the important public purpose underlying section 56-5-2950 of facilitating the compilation of reliable evidence in drunk driving prosecutions. *Accord, Commonwealth v. Smythe,* 23 Mass. App. Ct. 348, 502 N.E. (2) 162 (1987).

Other jurisdictions addressing this precise issue have uniformly held that infrared spectroscopy constitutes a "chemical test" or "chemical analysis." *See Curry v. State,* 522 So. (2d)

887 (Fla. Ct. App. 1988); *Commonwealth v. Smythe*, 23 Mass. App. Ct. 348, 502 N.E. (2d) 162 (1987); *State v. Nichols*, 110 Idaho 823, 718 P. (2d) 1261 (1986); *Fisher v. State*, 177 Ga. App. 465, 339 S. E. (2d) 744 (Ct. App. 1986); *State v. Richards*, 378 N.W. (2d) 259 (S.D. 1985); *Collier v. Schwendiman*, 709 P. (2d) 357 (Utah 1985); *Dollar v. State*, 287 Ark. 153, 697 S.W. (2d) 93 (1985); *Husk v. State*, 476 N.E. (2d) 149 (Ind. Ct. App. 1985); *Gandara v. State*, 661 S.W. (2d) 749 (Tex. Ct. App. 1983); *McConnell v. Commonwealth*, 655 S.W. (2d) 43 (Ky. Ct. App. 1983); *People v. Jones*, 118 Misc. (2d) 687, 461 N.Y.S. (2d) 962 (1983); *City of Dayton v. Schenck*, 63 Ohio Misc. 14, 409 N.E. (2d) 284 (1980); *State v. Moore*, 307 A. (2d) 548 (Del. Super. 1973). While not bound by these decisions, we find them to be persuasive. As the *Jones* court reasoned:

> [T]o adopt the defendant's position [that only tests using chemicals to analyze breath are "chemical tests" within the statute] would be to bind inflexibly the administration of justice to the level of technology extant at the time of the enactment of the statute while technological advances thereafter would be unavailable to law enforcement officials if they did not fall within the terminology of a dated statute. If such a result is not required, it ought not to be adopted.

*Id.* at 693-94, 461 N.Y.S. (2d) at 966. We hereby join the courts that have construed infrared spectroscopy to be a "chemical test" or "chemical analysis" for the purpose of testing persons charged with driving under the influence for the presence of alcohol in their breath.

Although the validity of infrared spectroscopy is not challenged in this appeal, we nevertheless take judicial notice that the infrared spectroscopy process utilized by the DataMaster has gained general acceptance in the scientific community. *Fry v. United States*, 293 F. 1013 (D.C. Cir. 1923) (touchstone of admissibility of evidence derived from scientific test or process is whether the process is sufficiently established to have gained general acceptance in the particular field in which it belongs). *Accord, McConnell*, 655 S.W. (2d) at 46; *Curry*, 522 So. (2d) at 889; *Jones*, 118 Misc. (2) at 695-96, 461 N.Y.S. (2d) at 967.

We find Squires's remaining contention to be without merit.

Accordingly, we conclude that the trial judge did not err in allowing testimony regarding Squires's alleged refusal to submit a breath sample. Squires's conviction for driving under the influence, first offense, is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.