562 S.E.2d 472

**STATE of South Carolina, Appellant,**

v.

**James Eugene HUNTLEY, Respondent.**

No. 25428.

Supreme Court of South Carolina.

Heard Nov. 27, 2001.
Refiled May 6, 2002.
Rehearing Denied May 6, 2002.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, and Assistant Attorney General Melody J. Brown, of Columbia; Solicitor John R. Justice, of Chester, for appellant.

Francis L. Bell, of Bell, Tindall & Freeland, of Lancaster, for respondent.

## ORDER WITHDRAWING ORIGINAL OPINION, SUBSTITUTING SUBSEQUENT OPINION, AND DENYING PETITION FOR REHEARING

PER CURIAM:

Opinion No. 25428, filed March 11, 2002, is hereby withdrawn and the following opinion is substituted. After careful consideration, the Petition for Rehearing is denied.

/s/ Jean H. Toal, C.J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

I would grant the petition to the extent it raises issues related to my dissent.

/s/ Costa M. Pleicones, J.

BURNETT, Justice:

On May 27, 2000, Respondent James Eugene Huntley (Huntley) was arrested for driving under the influence. After the jury was sworn, Huntley moved to suppress the results of his breathalyzer test, arguing the test operator used a different simulator solution test level than that set forth by law. The trial judge agreed and suppressed Huntley's breathalyzer results. The State appeals.[1]

## ISSUE

Did the trial judge err by suppressing Huntley's breathalyzer results?

## ANALYSIS

In 1998, the General Assembly passed Act No. 434 (Act 434) which made various changes to provisions of the driving under the influence law. One change amended South Carolina Code Ann. § 56–5–2950(a) to specify that before a breath test is administered, "an eight one-hundredths of one percent simulator test must be performed and the result must reflect a reading between 0.076 percent and 0.084 percent." Previously, § 56–5–2950(a) did not require a simulator test.[2] On June

---

1. At the conclusion of the suppression hearing, Huntley stated he had no objection to a stay of the proceedings pending the State's appeal. *See State v. McKnight*, 287 S.C. 167, 337 S.E.2d 208 (1985) (pre-trial order granting suppression of evidence which significantly impairs the prosecution of a criminal case is directly appealable under S.C.Code Ann. § 14–3–330(2)(a) (1976)).

2. While the South Carolina Law Enforcement Division had a regulation which set forth an approved method for performing breathalyzer tests, the regulation did not specify the parameters governing simulator tests. 26 S.C. Reg. 73–2 (Supp.1997).

4

29, 1998, the Governor approved Act 434. Subsequently, Act 434 was enrolled with the Office of the Secretary of State.

Months later, at the behest of the then Clerk of the Senate, the Code Commissioner amended Act 434. In relevant part, the amended version provides: "before the breath test is administered, a ten one-hundredths of one percent simulator test must be performed and the result must reflect a reading between 0.095 percent and 0.105 percent." S.C.Code Ann. § 56–5–2950(a) (Supp.1999).[3]

The parties disagree which version of Act 434 is applicable for purposes of Huntley's prosecution. The State argues the amended version of Act 434 applies; Huntley contends the original version of Act 434 applies.[4] We agree with Huntley.

One duty of the Code Commissioner is to "[c]ompile the public statutes of the State." S.C.Code Ann. § 2–13–60(1) (1986). Part of this duty includes preparing indices to the statutes, noting court decisions under appropriate statutory sections, and adding references to new acts and joint resolutions. S.C.Code Ann. § 2–13–60(2), (3), and (6). The Code Commissioner is only authorized to "[c]orrect typographical and clerical errors." S.C.Code Ann. § 2–13–60(10). He is not authorized to make any other changes by way of addition or deletion to the existing laws.

In amending Act 434, the Code Commissioner changed the simulator solution test level and its corresponding range of accuracy. In addition, the Code Commissioner increased the alcohol inference level throughout § 56–5–2950(b), increased the alcoholic concentration level at which a person must enroll in a safety program (§ 56–5–2951(B)), and increased the level of alcohol concentration at which an insurance penalty may be imposed (§ 56–1–288(U)). The Code Commissioner acted out-

---

3. At the time of Huntley's trial, the General Assembly had not adopted the 1999 Cumulative Supplement as official.

   In 2000, the General Assembly revised Act 434 to provide a ten one-hundredths of one percent simulator test with a result between 0.095 percent and 0.015 percent. Act No. 390, 2000 S.C. Acts 3365.

4. Prior to conducting Huntley's breathalyzer, the test operator ran a simulator test using a ten one-hundredths of one percent simulator test solution. Huntley claimed the test operator should have used an eight one-hundredths of one percent simulator test solution.

side his statutory authority in making these substantive changes. Accordingly, we conclude the original version of Act 434 is the law applicable to Huntley's prosecution.

■ Even though the trial judge properly concluded the original version of Act 434 applied, we nonetheless conclude the trial judge erred by suppressing Huntley's breathalyzer results.

The purpose of a simulator test is to ensure the breathalyzer machine produces an accurate, reliable breath-alcohol reading, and ultimately, an accurate blood-alcohol analysis.

> The alcoholic breath simulator is a part of the breathalyzer devised for the purpose of providing a standard alcohol-air mixture. By mixing an amount of absolute alcohol with distilled water, a desired concentration of breath alcohol may be achieved. The breathalyzer operator, by pumping room air through the simulator solution, is able *to determine whether the breathalyzer machine is functioning properly. For instance, if the simulator solution contains .10 of one percent alcohol, room air pumped through the simulator will result in a corresponding reading on the breathalyzer machine.*

*State v. Parker,* 271 S.C. 159, 162, 245 S.E.2d 904, 905 (1978) (emphasis added); *see* 2 Richard E. Erwin *Defense of Drunk Driving Cases* § 18.04 (2001) (simulator test provides a known quantity of alcohol to the testing device to determine the capability of the device to properly analyze a sample at the time of the subject test); *see also State v. Squires,* 311 S.C. 11, 426 S.E.2d 738 (1992) (public purpose behind implied consent law is to facilitate compilation of *reliable* evidence in drunk driving prosecutions).

The alcohol level in the simulator test is used to determine the reliability of the breathalyzer machine's test results; it neither calibrates the breathalyzer machine nor affects the capability of the machine to properly measure the subject's blood-alcohol level. *See State v. Parker, supra.* Accordingly, as far as reliability is concerned, it is irrelevant whether the simulator test is run using an alcohol level of .10 or .08 percent. What is relevant is that the machine accurately measures the percentage of alcohol in the simulator test

solution so that it will, likewise, accurately measure the percentage of alcohol in the subject's breath.

Even if the breathalyzer operator did not use the simulator test solution at the alcohol concentration required by Act 434, Huntley was not prejudiced. There is no question the breathalyzer machine was operating properly and its results were reliable.[5] Consequently, the trial judge erred by excluding Huntley's breathalyzer test results. *State v. Chandler,* 267 S.C. 138, 143, 226 S.E.2d 553, 555 (1976) ("[E]xclusion of evidence should be limited to violations of constitutional rights and not to statutory violations, at least where the [defendant] cannot demonstrate prejudice at trial resulting from the failure to follow statutory procedures."). Evidence the simulator test was not run in conformity with Act 434 goes to the weight, not the admissibility, of Huntley's breathalyzer results.

**REVERSED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.
PLEICONES, J., dissenting in a separate opinion.

PLEICONES, Justice, dissenting:

I respectfully dissent. I agree with the majority that the original version of Act 434 is applicable to Huntley's case. Unlike the majority, however, I believe that the failure to comply with the clear and unambiguous statutory language mandating a simulator test be run using "an eight one-hundredths of one percent" alcohol solution bars the use of the breath test results at trial. *State v. Breech,* 308 S.C. 356, 417 S.E.2d 873 (1992)(DUI statute strictly construed in favor of defendant).

---

5. As conceded by Huntley at trial and in his appellate brief, although the test operator ran a simulator test using a solution of .10 percent alcohol rather than .08 percent, the simulator results indicated the machine was operating properly.