676 S.E.2d 124

**The STATE, Appellant,**

v.

**Anthony Clark ODOM, Respondent.**

**No. 26624.**

Supreme Court of South Carolina.

Heard March 5, 2009.

Decided March 30, 2009.

Rehearing Denied May 13, 2009.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, and Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Appellant.

Andrew J. Johnston, of Spartanburg, Jack B. Swerling of Columbia, and Katherine Carruth Link, of West Columbia, for Respondent.

Acting Justice MOORE:

This case involves questions as to the validity of criminal discovery orders obtained by the State under the federal PATRIOT Act for use in an online child predator sting.

Respondent Anthony Clark Odom (Respondent) allegedly communicated with a detective with the Spartanburg County Sheriff's Office, who was posing as a thirteen-year-old girl, in online chat rooms. Respondent was charged with criminal solicitation of a minor. In pre-trial hearings, the circuit court found that the Attorney General's office failed to comply with South Carolina law in procuring criminal discovery orders, and the orders were therefore not proper under 18 U.S.C. § 2703(d) and 18 U.S.C. § 3127(2)(B) (2006). The court further found that parts of the undercover investigation violated internal policies. The court denied Respondent's Motion to Dismiss but granted Respondent's Motion to Suppress certain evidence obtained pursuant to the orders and evidence obtained by methods which violated the policies. The State appealed to this Court.[1] We reverse.

## FACTS

From March 12, 2006 until May 5, 2006, a detective with the Spartanburg County Sheriff's Office and member of the Inter-

---

1. The State appealed pursuant to *State v. McKnight*, 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985) ("A pre-trial order granting the suppression of evidence which significantly impairs the prosecution of a criminal case is directly appealable under S.C.Code Ann. § 14–3–330(2)(a) (1976).").

net Crimes Against Children Task Force (ICAC) chatted on Yahoo! Instant Messenger with an individual using the screen name "Danger6552000," which also displayed the name "Roge Wilson." [2] While chatting, the detective used a profile he created that indicated that the person chatting was a thirteen-year-old girl named "Melanie." [3] The detective testified that many of the chats with Roge from March 12 until March 20 were conducted from his personal computer at his home, at times at which he was not officially on duty.

In the first chat, Roge noted that Melanie was thirteen years old and made sexually explicit comments, attempting to engage Melanie in cybersex. In later chats, Roge continued to make sexually explicit comments. Roge stated multiple times that he could not engage in actual sexual acts with Melanie until she was sixteen years old, but at one point he agreed to come see Melanie and at another agreed to meet her at the mall and take her to a hotel room, on both occasions for the purpose of having sex with Melanie.

On March 23, the Attorney General's Office requested an order from The Honorable G. Thomas Cooper, Chief Administrative Judge for the Fifth Judicial Circuit, under 18 U.S.C. § 2703(d) to obtain information from Yahoo! related to the screen names used by Roge. The State received the IP address [4] from Yahoo! and determined that the address belonged to Bellsouth Internet Service. The State then requested another § 2703(d) order to obtain the subscriber information and connection logs associated with the IP address, which was granted by the Honorable James W. Johnson, Jr. Based on the information provided by Bellsouth, the State determined that the screen names used by Roge belonged to

---

**2.** We refer to the party with whom the detective chatted as "Roge" for consistency.

**3.** The screen name used by the detective is not used in this opinion in order to protect ongoing investigations.

**4.** "Each computer connected to the internet is assigned a unique numerical address, otherwise known as an Internet protocol or IP address, to identify itself and facilitate the orderly flow of electronic traffic. An IP address is a string of up to twelve digits, such as '202.134.34.9.'" *Peterson v. National Telecommunications and Information Admin.,* 478 F.3d 626, 629 (4th Cir.2007).

Respondent. On May 8, the State requested and received another order from Judge Cooper to obtain more information about Respondent's account.

The State indicted Respondent on one count of criminal solicitation of a minor in violation of S.C.Code Ann. § 16–15–342 (2006). The circuit court held pre-trial hearings to deal with various motions made by Respondent. The judge granted Respondent's Motion to Suppress information obtained from the discovery orders after finding that the Attorney General's Office did not comply with South Carolina law relating to the issuance of orders for pen registers and trap and trace devices. As a result, in the view of the trial judge, the South Carolina courts were not authorized to issue the orders under § 2703(d). Furthermore, the trial judge suppressed evidence of the internet chats between Respondent and the undercover officer which took place between March 12 and March 20 due to the fact that chats during this period were not conducted in compliance with ICAC Task Force standards. The State appealed.

## STANDARD OF REVIEW

Appellate courts are bound by fact findings in response to motions preliminary to trial when the findings are supported by the evidence and not clearly wrong or controlled by error of law. *State v. Amerson*, 311 S.C. 316, 320, 428 S.E.2d 871, 873 (1993).

## ISSUES

A. Did the circuit court err in finding that the South Carolina courts were not authorized to issue the discovery orders under § 2703(d)?

B. Did the circuit court err in suppressing evidence of chats between March 12 and March 20 due to violations of ICAC policies?

## DISCUSSION

### A. Authority to issue § 2703(d) discovery orders

The State connected Respondent to the screen names associated with Roge through the use of criminal discovery orders

allowed by the federal PATRIOT Act. At the circuit court, the State acknowledged that the substantive factual showings contained in the applications made to Judge Cooper and Judge Johnson were less than the probable cause standard required to obtain an order for a pen register or trap and trace device under South Carolina law and that the sole legal authority upon which it relied in obtaining each of its discovery orders was 18 U.S.C. § 2703(d). The statute provides:

> (d) Requirements for Court Order.—A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State.

18 U.S.C. § 2703(d) (2006). The term "court of competent jurisdiction" is defined in 18 U.S.C. § 3127(2)(B):

> (2) the term "court of competent jurisdiction" means—
>
> . . .
>
> (B) a court of general criminal jurisdiction of a State authorized by the law of that State to enter orders authorizing the use of a pen register or a trap and trace device;

18 U.S.C. § 3127 (2006).

The circuit court found that the orders were not properly issued because, in his view, (1) the issuing courts were not "court[s] of competent jurisdiction" since they were not authorized to enter orders authorizing use of a pen register or trap device; and (2) South Carolina law prohibits § 2703(d) orders. We hold that both findings were legal errors.

### (1) Court of competent jurisdiction

Section 2703(d) provides that "[a] court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction . . . ." 18 U.S.C. § 2703(d). Section 3127(2)(B) defines a "court of competent jurisdiction" as a "court of general criminal jurisdiction of a State authorized by the law of that State to enter orders

authorizing the use of a pen register or a trap and trace device." 18 U.S.C. § 3127(2)(B).

There is no dispute that the circuit court qualifies as a court of general criminal jurisdiction under the South Carolina Constitution. S.C. Const. art. V, § 11. Furthermore, § 17–29–30(A)(2) allows a law enforcement officer of this State to apply for a pen register from any circuit court. S.C.Code Ann. § 17–29–30.

Nonetheless, the circuit court found that the issuing courts were not courts of competent jurisdiction because, given that the State admittedly did not show probable cause, the courts were not authorized to issue pen registers in the instant case. In short, he found that the courts failed the second part of § 3127. This was error.

Section 2703 sets forth standards required in order to obtain information. Specifically, § 2703(d) requires a showing of "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). It is unlikely that Congress intended to require, as a threshold matter, that the forum state's standard for the issuance of pen devices be met and then require that "reasonable suspicion" standards of § 2703(d) be met before a court order is issued. Moreover, such an interpretation would defeat uniformity.

The more logical reading of the statute is that by requiring that applications under § 2703(d) be heard by a "court of competent jurisdiction" Congress meant to ensure that the courts deciding whether or not to issue § 2703(d) orders were competent to consider whether or not to grant orders of a similar type. For this reason, we find that the circuit court erred in finding that the South Carolina circuit courts were not "court[s] of competent jurisdiction" for purposes of § 2703.

## (2) Prohibited by the law of such State

■ Though § 2703(d) allows for courts to issue orders for disclosure, it also limits the court's power to do so where a State governmental authority seeks the order. 18 U.S.C. § 2703(d). In that case, "such a court order shall not issue if

prohibited by the law of such State." *Id.* In addition to finding that the issuing courts were not "courts of competent jurisdiction" under § 3127, the circuit court found, under § 2703(d), that the orders were prohibited by South Carolina law.

The trial court found § 2703(d) orders were prohibited by S.C.Code Ann. § 17–29–20(A) ("Except as provided in this section, no person may install or use a pen register or trap and trace device without first obtaining a court order under § 17–29–40."). The fundamental flaw in the trial court's reasoning is in equating the issuance of pen registers and trap and trace devices with § 2703(d) orders. Section 2703(d) addresses orders issued under subsection (b) or (c) of § 2703. 18 U.S.C. § 2703(d). Neither subsection calls for the issuance or use of pen registers and/or trap and trace devices. Moreover, the information obtained through the use of either subsection is very different from the information obtained through the use of a pen register and trap and trace device.

A pen register or trap and trace device is different from a § 2703(d) order in two main ways. First, while § 2703(d) orders seek information retrospectively, a pen register or trap and trace device captures information after its installation. *See* S.C.Code Ann. § 17–29–10. The devices intercept information in transmission while § 2703(d) orders elicit information already in the possession of the provider. *See* 18 U.S.C. § 2703(b), (c).

Second, information obtained by a § 2703(d) order is more specific than information obtained through use of a pen register or a trap and trace device. While § 2703(d) orders may be limited to a certain subscriber or time period, pen registers and trap and trace devices capture all phone numbers dialed from the targeted phone line without regard to the relevance to the ongoing investigation. *See* 68 Am.Jur.2d Pen Registers § 342 (2008).

Because § 2703(d) orders do not call for issuance of a pen register or trap and trace device and allow parties to obtain information different than that obtained by a pen register or trap and trace device, we find that §§ 17–29–10, et seq. does not establish that § 2703(d) orders are prohibited by South

Carolina law. Therefore, the trial court erred in finding that the orders were improperly issued on this ground.

## B. Suppression due to violation of ICAC policies

■ The circuit court suppressed evidence of the chats between Roge and the undercover officer that occurred between March 12 and March 20 due to the officer's noncompliance with the ICAC Program and Investigative Standards (ICAC Standards) which were incorporated into a Memorandum of Understanding (MOU) between Spartanburg and the Attorney General's Office.

The MOU provides, among other things, that no personally owned equipment should be used in ICAC investigations and that only sworn, on-duty ICAC personnel should conduct investigations in an undercover capacity. At the pre-trial hearing, the undercover officer admitted violating the policies by communicating with Roge while the officer was officially off-duty and using his personal computer, rather than on ICAC computers. The ICAC computers are equipped with software capable of recording various information concerning all communications sent and received in the course of undercover investigation.

The State argues that the violations of the MOU and ICAC Standards go to the weight rather than the admissibility of the evidence. We agree.

This Court has held on a number of occasions that violations of procedure go to the weight, rather than the admissibility of evidence. *See, e.g., State v. Huntley*, 349 S.C. 1, 562 S.E.2d 472 (2002) (failure to conduct breathalyzer test using required sample); *State v. Carter*, 344 S.C. 419, 544 S.E.2d 835 (2001) (flaw in chain of custody). Moreover, exclusion is typically reserved for constitutional violations. *See Huntley*, 349 S.C. at 6, 562 S.E.2d at 474 ("Exclusion of evidence should be limited to violations of constitutional rights and not to statutory violations, at least where the defendant cannot demonstrate prejudice at trial resulting from the failure to follow statutory procedures.").

The MOU and ICAC Standards are not codified and were created, not by the Legislature, but by law enforcement. The MOU and ICAC Standards serve a variety of purposes. We

find that the violation of the MOU and ICAC policies speak to the weight of the evidence rather than its admissibility. Therefore, the circuit court erred in suppressing the chats between March 12 and March 20 on this basis.

## CONCLUSION

The circuit court erred in finding a violation of § 2703(d) and in suppressing evidence on that basis and on the basis of violations of ICAC Standards. We therefore reverse the circuit court.

**REVERSED.**

TOAL, C.J., WALLER, BEATTY and KITTREDGE, JJ., concur.