703 S.E.2d 197

Anthony and Barbara **GRAZIA**, individually and on behalf of all other similarly situated Plaintiffs, Appellants,

v.

**SOUTH CAROLINA STATE PLASTERING, LLC**, Respondent,

and

South Carolina State Plastering, LLC, Respondent,

v.

Del Webb Communities, Inc., Pulte Homes, Inc. and Kephart Architects, Inc., Third–Party Defendants,

Of Whom Del Webb Communities, Inc. and Pulte Homes, Inc., are Respondents.

No. 26882.

Supreme Court of South Carolina.

Heard June 23, 2010.

Decided Oct. 4, 2010.

Rehearing Denied Jan. 20, 2011.

---

564

John T. Chakeris, of Chakeris Law Firm, of Charleston, Phillip Ward Segui, of Segui Law Firm, of Mt. Pleasant, W. Jefferson Leath, Jr., and Michael S. Seekings, of Leath, Bouch & Crawford, LLP, both of Charleston, for Appellants.

A. Victor Rawl, Jr., and Robert L. Widener, of McNair Law Firm, PA, Everett A. Kendall, II and Christy E. Mahon, both of Sweeny Wingate & Barrow, PA, all of Columbia, for Respondents.

Justice HEARN.

Anthony and Barbara Grazia appeal the circuit court's grant of a motion to strike class allegations from their complaint. The Grazias contend the circuit court erred in finding the Notice and Opportunity to Cure Construction Dwelling Defect Act is in conflict with the State's class action lawsuit jurisprudence under Rule 23, SCRCP. We agree and reverse.

## FACTUAL/PROCEDURAL BACKGROUND

This action involves the alleged negligent and defective construction of residential homes in a subdivision in Bluffton, South Carolina. The Grazias brought a class action on behalf of themselves and those similarly situated, asserting defective exterior stucco work by Respondent South Carolina State Plastering, LLC (State Plastering) in the construction of approximately 2,673 [1] homes in a development called Sun City. The complaint maintains the stucco exteriors had common and typical problems inherent to their design and installation that would require identical remediation across the class, namely, stripping the homes of the existing stucco and recladding with a properly installed stucco system.

State Plaster answered, and brought a third-party complaint against Del Webb Communities, Inc. (Developer), Pulte Homes, Inc. (Builder), and Kephart Architects, Inc. (Architect), (collectively referred to as Respondents). In its answer, State Plaster argued the Grazias had failed to comply with the express provisions of the Notice and Opportunity to Cure Construction Dwelling Defect Act (Right to Cure Act),[2] which entitles a contractor or subcontractor to notice of any qualifying construction defect, and the opportunity to cure, before the action is commenced. At the time this action was filed, the Grazias had not complied with the notice requirements; therefore, the parties entered into a consent order staying the action pending subsequent compliance with the Right to Cure

---

1. The number of homes affected by the alleged defective stucco is uncertain. During the hearing on Respondents' motion to strike class allegations, the number was referenced as "some four thousand homes," while the Grazias' own motion for reconsideration refers to 2,673 homes.

2. S.C.Code Ann. § 40–59–810 et seq. (Supp.2009).

Act. The Grazias then personally complied with the Right to Cure provisions, and the consent order was lifted. Thereafter, Respondents moved to dismiss the class allegations contained in the Grazias' complaint, or, in the alternative, requested a stay of the proceedings until each of the similarly situated plaintiffs complied with the Right to Cure Act notice requirements.

A hearing on Respondents' motions was held, and additional memoranda in support of the parties' respective positions were submitted to the court following the hearing. Ultimately, the circuit court issued an order striking the Grazias' class allegations as incompatible with the Right to Cure Act. The Grazias filed a motion for reconsideration with the circuit court, but it was denied, and this appeal followed. The following issue is presented to the Court on appeal:

I. Did the circuit court commit reversible error in granting Respondents' motion to strike class allegations?

## STANDARD OF REVIEW

■■■■■ A motion to strike under Rule 12(f), SCRCP, which challenges a theory of recovery in the complaint, is in the nature of a motion to dismiss under Rule 12(b)(6), SCRCP. *McCormick v. England,* 328 S.C. 627, 632, 494 S.E.2d 431, 433 (Ct.App.1997). In reviewing a ruling on a motion to dismiss a claim, this Court must base its decision solely on the allegations set forth on the face of the complaint. *Id.* at 632–33, 494 S.E.2d at 433. "The motion cannot be sustained if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *Id.* at 633, 494 S.E.2d at 433 (citing *Dye v. Gainey,* 320 S.C. 65, 463 S.E.2d 97 (Ct.App.1995)). "The question is whether in the light most favorable to the plaintiff, and with every reasonable doubt resolved in her behalf, the complaint states any valid claim for relief. The cause of action should not be struck merely because the court doubts the plaintiff will prevail in the action." *Id.* at 633, 494 S.E.2d at 433–34.

## LAW/ANALYSIS

### I. Right to Cure Act Incompatible with Rule 23, SCRCP

The Grazias contend the circuit court committed reversible error in striking the class allegations from its complaint based

on its conclusion that class action lawsuits under Rule 23, SCRCP, are incompatible with the Right to Cure Act. We agree.

The Right to Cure Act is set forth in sections 40–59–810 to 860 of the South Carolina Code. The pertinent provisions of the legislation are as follows:

§ 40–59–830. **Stay of action upon non-compliance with article.**

If the claimant files an action in court before first complying with the requirements of this article, on motion of a party to the action, the court shall stay the action until the claimant has complied with the requirements of this article.

§ 40–59–840. **Notice of claim; timing; contents; request for clarification.**

(A) In an action brought against a contractor or subcontractor arising out of the construction of a dwelling, the claimant must, no later than ninety days before filing the action, serve a written notice of claim on the contractor. The notice of claim must contain the following:

(1) a statement that the claimant asserts a construction defect;

(2) a description of the claim or claims in reasonable detail sufficient to determine the general nature of the construction defect; and

(3) a description of any results of the defect, if known.

The contractor or subcontractor shall advise the claimant within fifteen days of receipt of the claim if the construction defect is not sufficiently stated and shall request clarification.

§ 40–59–850. **Contractor's election to inspect, remedy, settle, or deny claim; inspection of construction defect; response to contractor's offer; admissibility.**

(A) The contractor or subcontractor has thirty days from service of the notice to inspect, offer to remedy, offer to settle with the claimant, or deny the claim regarding the defects. The claimant shall receive written notice of the contractor's or subcontractor's, as applicable, election under this section. The claimant shall allow inspection of the construction defect at an agreeable time to both parties, if

requested under this section. The claimant shall give the contractor and any subcontractors reasonable access to the dwelling for inspection and if repairs have been agreed to by the parties, reasonable access to affect repairs. Failure to respond within thirty days is deemed a denial of the claim.

(B) The claimant shall serve a response to the contractor's offer, if any, within ten days of receipt of the offer.

(C) If the parties cannot settle the dispute pursuant to this article, the claimant may proceed with a civil action or other remedy provided by contract or by law.

(D) Any offers of settlement, repair, or remedy pursuant to this section, are not admissible in an action.

### a. Section 40–59–830 Stay Provision

■ It is first necessary to address the circuit court's holding with respect to the stay provision contained in the Right to Cure Act, as it formed the basis for the court's determination that the Act and Rule 23 are incompatible. The circuit court found section 40–59–830, which allows for the staying of an action, upon motion by any party to the action, applied only to those persons who mistakenly file the action prior to complying with the Right to Cure Act, and could not be used to sanction a knowing violation of the statute. We disagree.

■ "This Court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation." *Ward v. West Oil Co., Inc.*, 387 S.C. 268, 273–74, 692 S.E.2d 516, 519 (2010) (citation omitted). Simply stated, there is no statutory or case law basis for the circuit court's holding that section 40–59–830 should only apply in accidental situations. The plain language of section 40–59–830 does not restrict its application beyond "[a] claimant [who] files an action in court before first complying with the requirements of this article . . . ." There is nothing in the wording of section 40–59–830 which supports the circuit court's limitation of this provision to mistaken filing situations; rather, the plain language of the statute dictates a different result. Consequently, the circuit court erred in

construing section 40–59–830 in a manner contrary to the plain language of the statute.

### b. Harmonization of the Right to Cure Act's Stay Provision and Notice Requirements

The circuit court also found that section 40–59–840 imposes an absolute condition precedent to the filing of lawsuits that qualify under the Right to Cure Act. Subsection 840, as provided above, encompasses civil lawsuits filed against a contractor or subcontractor, and *requires* the claimant to serve written notice no later than ninety days before filing the action. We find no error in the circuit court's analysis regarding the Right to Cure Act's notice provisions; however, in light of this Court's holding with respect to the stay provision, it is necessary to harmonize these seemingly inapposite provisions within the Right to Cure Act.

It is clear to this Court that these two provisions are at odds, as the language used in section 40–59–840 appears to require mandatory compliance with the Act's notice provisions prior to filing an action, while section 40–59–830 provides a contractor/subcontractor with a means of staying an action that is filed without first complying with the same notice provision. *Compare* § 40–59–840 (stating "[a] claimant *must*, no later than ninety days before filing the action, serve a written notice of claim on the contractor") (emphasis added) *and* § 40–59–830 (providing that "[i]f a claimant files an action [ ] before first complying with [§ 40–59–840], on a motion of a party to the action, the court *shall* stay the action until the claimant has complied with the requirements of this article") (emphasis added). The circuit court found the Right to Cure Act, *as a whole*, incompatible with Rule 23. In so doing, the court emphasized that, because the Right to Cure Act is a statute, and Rule 23 is a court rule, an attempt to harmonize the two would run counter to the general rule that any conflict between a statute and court rule must be resolved in favor of the statute. *See* S.C. Const., art. V, § 4 (2009) ("Subject to the statutory law, the Supreme Court shall make rules governing the practice and procedure in all such courts."). However, in construing these two seemingly conflicting portions of the same Act, the circuit court does not appear to have utilized the

same basic precepts of statutory construction, namely harmonization.

This Court's primary consideration in interpreting a statute is finding the intent of the legislature. *State v. Squires*, 311 S.C. 11, 14, 426 S.E.2d 738, 739 (1992). "In construing statutory language, the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect." *South Carolina State Ports Authority v. Jasper County*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006) (citing *TNS Mills, Inc. v. South Carolina Dept. of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998)). "A statute should not be construed by concentrating on an isolated phrase." *Id.* (citing *Laurens County School Districts 55 and 56 v. Cox*, 308 S.C. 171, 417 S.E.2d 560 (1992)); *but see Ramsey v. County of McCormick*, 306 S.C. 393, 397, 412 S.E.2d 408, 410 (1991) (citing *Jolly v. Atlantic Greyhound Corp.*, 207 S.C. 1, 35 S.E.2d 42 (1945)) ("Under the 'last legislative expression' rule, where conflicting provisions exists, the last in point of time or order of arrangement, prevails."); *Eagle Container Co., LLC v. County of Newberry*, 379 S.C. 564, 572, 666 S.E.2d 892, 896 (2008) (quoting *Feldman v. S.C. Tax Commission*, 203 S.C. 49, 54, 26 S.E.2d 22, 24 (1943)) ("The last legislative expression rule, however, 'is purely an arbitrary rule of construction and is to be resorted to only when there is clearly an irreconcilable conflict, and all other means of interpretation have been exhausted.' ").

In arguing that this Court should not, and more strongly cannot, overcome the seemingly mandatory plain language of the notice requirements in sections 40–59–840 and 850, Respondents advocate ignoring the equally plain language of the stay provision contained in section 40–59–830. This Court can no more disregard the stay provision than it can disregard the notice requirements. Instead, it is our duty to attempt to harmonize these two ostensibly at-odd provisions before analyzing whether or not the Right to Cure Act is in conflict with Rule 23. *Ex parte Chase*, 62 S.C. 353, 362–63, 38 S.E. 718, 724 (1901) (discussing the well-settled rule that where two portions of a statute appear on their face to be conflicting, every effort should be made to reconcile these

apparently conflicting provisions, and bring them into harmony, if possible).

The language included in section 40–59–840 requires potential claimants to submit notice to a contractor/subcontractor prior to filing a qualifying action. Conversely, the General Assembly also included a stay provision in the Right to Cure Act to specifically address situations where claimants file an action prior to full compliance with the notice provisions. As discussed above, the circuit court erroneously found that the section 40–59–830 stay provision only applied to accidental filing situations. Upon concluding this, the circuit court did not thereafter attempt to harmonize the two provisions. We believe it is possible to construe these two provisions under the Right to Cure Act in a manner that gives each provision its due effect.

Under Respondents' theory of this case, a contractor/subcontractor's receipt of *pre-litigation* notice under section 40–59–840 should trump the General Assembly's equally plain intent to allow actions to be stayed pending compliance with the Right to Cure Act. The folly of this argument can be seen by exploring the public policy behind the Right to Cure Act, which Respondents, themselves, suggest should control.

The Right to Cure Act has an express public policy intent of: (1) addressing the need for an alternative dispute resolution method to promote settlement of construction disputes without litigation, while adequately protecting the rights of homeowners; and (2) requiring a would-be plaintiff in certain construction defect matters to file a notice of claim with the would-be defendant and provide an opportunity to resolve the claim without litigation. *See* 2003 South Carolina Laws Act 82 (S.B. 433). The stated public policy, therefore, is not abridged when a court, on motion, is required to stay a proceeding in order to *require compliance* with the Right to Cure Act's notice provisions.

The circuit court also erroneously found, based on an argument advanced by Respondents, that the Right to Cure Act endowed substantive rights [3] on the contractor/subcontractor,

---

3. The alleged rights include: (1) the right to request clarification of the alleged defect (§ 40–59–840); the right to inspect the dwelling (§ 40–59–850); (3) the right to offer to remedy the alleged defect (§ 40–59–

through the notice provisions, that are inconsistent with class action litigation. However, these "new rights" are consistent with those accorded to *any* defendant in litigation, and are "rights" already available to them under existing discovery and production requirements of Rule 34(a)(2), SCRCP, once a normal civil action is filed. Rule 34(a)(2) provides:

> Any party may serve on any other party a request ... (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, survey-ing, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

These rights under the Right to Cure Act notice provisions are not new substantive rights, but instead represent an effort by the General Assembly to provide the contractors/subcon-tractors a new procedural timeline for asserting existing litiga-tion rights. In other words, the right of entry onto and inspection of the claimant's dwelling is now permitted to occur prior to the filing of the action under the notice provisions of sections 40–59–840 and 850, as opposed to during an action's normal discovery period. As the Grazias correctly point out, the Right to Cure Act does not confer any corresponding obligations on the part of the claimant that would not ordinari-ly be present: the claimant is not required to accept any offer by the contractor/subcontractor to remedy the alleged defect, and he or she is not required to accept an offer of settlement of the claim.

Respondents thus argue that their *pre-litigation* receipt of notice and the Act's accompanying "rights," should be the Court's prevailing concern. We believe this is contrary to the public policy of the Right to Cure Act: the predominant concern should be on the contractor/subcontractor's actual exercise of the rights to notice and the opportunity to cure, not *when* those rights are received. As discussed extensively above, we fail to discern how the rights to a pre-litigation opportunity to inspect and remedy/settle are substantially abridged when a court stays the proceedings under section

850); (4) the right to offer to settle the claims (§ 40–59–850); and (5) the right to deny the claim (§ 40–59–850).

40–59–830, thereby granting the contractor/subcontractor the ability to explore those rights in full. As a result, we believe once properly harmonized, the Right to Cure Act's stay and notice provisions may be construed together to give each one its due effect, within the parameters of the Act's public policy.

### c. Incompatibility with **Rule 23, SCRCP**

 Finally, the circuit court determined that the Right to Cure Act and the procedures for certifying a class action under Rule 23[4] were incompatible, and that any conflict between the statute and the rule must be resolved in favor of the statute. The effect of the circuit court's determination was that no class action lawsuits could be filed for claims falling under the rubric of the Right to Cure Act. We disagree that the Act and class action litigation are incompatible.

The interplay between the Right to Cure Act and Rule 23 is an issue of first impression in this state. The underlying basis for the circuit court's determination that the Right to Cure Act and Rule 23 are incompatible was its view that the section 40–59–830 stay provision cannot be used to knowingly violate the Act's notice provisions, which the court viewed as an absolute condition precedent to filing an action, in the absence of a mistaken filing. As we determined above, the circuit court's analysis of the stay provision was erroneous, and these two provisions may be harmonized in a way that furthers the policy of the Right to Cure Act. Once properly harmonized, we find no fatal conflict between the Right to Cure Act and this State's class action jurisprudence, and further find the stay provision would be a reasonable and logical way for a

---

4. Rule 23 provides:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if the court finds (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class, and (5) in cases in which the relief primarily sought is not injunctive or declaratory with respect to the class as a whole, the amount in controversy exceeds one hundred dollars for each member of the class.

court to proceed when an action containing class allegations is filed under the Act.[5]

The basis for our decision is once again rooted in the public policy behind the Right to Cure Act's notice provisions: the purpose of the Act is to encourage the resolution of these types of claims without using litigation, by providing an environment that codifies a contractor/subcontractor's ability to inspect and offer a remedy or settlement. Enforcing a stay provision does absolutely nothing to restrict the furtherance of that purpose; instead, the purpose is better served by allowing the use of the Right to Cure Act's stay provision to allow a court to determine whether or not a class action is feasible under the circumstances in each individual case, rather than striking the class allegations in toto at the outset. *See, e.g., Trimble v. Itz,* 898 S.W.2d 370, 373–74 (Tex.App.1995) (considering similar notice provisions included in statutes requiring pre-litigation notice and concluding that the purpose of a statute is better served by abeyance than dismissal).

Respondents maintain that individual claimants under the Right to Cure Act are the sole persons authorized to bring an action for their own homes. Stated differently, Respondents allege the Right to Cure Act does not provide for representative compliance with its notice provisions; therefore, the Act is incompatible with class action litigation. However, this is nothing more than a generalized argument against class action litigation, as the named plaintiff in a class action will never have specific standing for *each* individualized claim that comprises the class. *See Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979) (providing that class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only). Upon a motion for class certification, it will be incumbent on the circuit court to determine whether or not the action meets each of the five prerequisites proponents of class certification are required to

---

**5.** As will be discussed below, the question of whether certification of a class in this case is proper, much less the manner in which it would be achieved and managed, is not an issue that is properly before the Court. Consequently, the issue is not whether *these* claims could be properly certified, but rather whether class certification could be achieved under *any circumstances* under the Right to Cure Act.

prove. *See Gardner v. South Carolina Dep't of Revenue,* 353 S.C. 1, 20–21, 577 S.E.2d 190, 200 (2003) (quoting Rule 23, SCRCP) (internal quotations omitted) ("The prerequisites are: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; 4) the representative parties must fairly and adequately protect the interests of the class; and 5) the amount in controversy must exceed one hundred dollars for each member of the class."). If and when these prerequisites are met, the court may then find that representative notice under the Right to Cure Act is appropriate. Just as Respondents maintain the General Assembly's failure to specifically authorize representative actions under the Right to Cure Act is persuasive, the General Assembly's silence in that regard is equally persuasive, especially when it has chosen to expressly bar class action litigation in other areas. *See* S.C.Code Ann. § 9–21–40 (Supp.2009) (prohibiting claims prosecuted on behalf of a class); S.C.Code Ann. § 12–60–80(c) (Supp.2009) (barring class actions for refunds of taxes); S.C.Code Ann. § 39–5–140(a) (1985) (preventing an action for actual damages from being brought in a representative capacity).

▮▮▮ Finally, public policy arguments favor the Court finding a way to reconcile the Right to Cure Act and Rule 23. "[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Califano,* 442 U.S. at 701, 99 S.Ct. at 2557. This Court has expressed the viewpoint that class actions are favored in this state:

Our state class action rule differs significantly from its federal counterpart. The drafters of Rule 23, South Carolina Rules of Civil Procedure (SCRCP) intentionally omitted from our state rule the additional requirements found in Federal Rule 23(B), Federal Rules of Civil Procedure (FRCP). By omitting the additional requirements, Rule 23, SCRCP, endorses a more expansive view of class action availability than its federal counterpart.

*Littlefield v. South Carolina Forestry Comm'n,* 337 S.C. 348, 354–55, 523 S.E.2d 781, 784 (1999). Consequently, the circuit court erred in striking the Grazia's class allegations on the basis that the Right to Cure Act is incompatible with Rule 23.[6]

The decision of the circuit court is therefore

**REVERSED.**

BEATTY, J., and Acting Justice JAMES E. MOORE, concur. PLEICONES, Acting C.J., concurring in a separate opinion. KITTREDGE, J., dissenting in a separate opinion.

Acting Chief Justice PLEICONES, concurring in a separate opinion.

Because I disagree with the reasoning of the circuit court, I concur in the majority opinion. In my view, whether a class action is compatible with the Notice and Opportunity to Cure Construction Dwelling Defects Act (Act) remains an open question.

The circuit court noted that the mandatory language of S.C.Code Ann. § 40–59–840 requires a homeowner to meet notice requirements before filing a lawsuit. The circuit court held that absent compliance with the pre-filing notice requirements, putative class members could not individually bring the claims made in the complaint. Consequently, the circuit court granted the Respondents' motion to strike class allegations

---

**6.** We also note that, to the extent the circuit court's order found that a purported proposal for class certification did not meet the statutory mandates of the Right to Cure Act, and that the proposed process for certification would necessarily require an opt-in procedure violating this Court's prohibition of the procedure as set forth in *Salmonsen v. CGD, Incorporated,* the order is vacated. 377 S.C. 442, 661 S.E.2d 81 (2008). This case was before the circuit court on a motion to strike class allegations. A motion to certify this class has not been made; therefore, the circuit court erred in discussing the manner and mode in which the action could be certified. *See Griffin v. Capital Cash,* 310 S.C. 288, 294, 423 S.E.2d 143, 147 (Ct.App.1992) (citing *Friedberg v. Goudeau,* 279 S.C. 561, 562, 309 S.E.2d 758, 759 (1983)) ("It is an error of law for a court to decide a case on a ground not before it."); *see also Booth v. Grissom,* 265 S.C. 190, 192, 217 S.E.2d 223, 224 (1975) ("It is elementary that the courts of this State have no jurisdiction to issue advisory opinions."); *In re Chance,* 277 S.C. 161, 161, 284 S.E.2d 231, 231 (1981) (noting South Carolina appellate courts have "consistently refrained" from issuing purely advisory opinions).

from the complaint, reasoning that "[t]he named-plaintiffs cannot use a class action to avoid the requirements of the Act on behalf of the putative class members." I disagree with the circuit's court premise, as I believe putative class members could individually bring claims without first meeting the pre-filing requirements of § 40–59–840, though such claims may be stayed pending compliance.

I do not disagree with the circuit court that S.C.Code Ann. § 40–59–840 requires a plaintiff to meet the notice requirements before filing a lawsuit. However, I differ with the circuit court as to the consequence of failing to do so. The circuit court would hold that the consequence of failing to meet pre-filing notice requirements is that the court will not recognize the suit as "filed." In my opinion, this position cannot be correct given § 40–59–830, which (1) explicitly recognizes a situation where a party has filed a lawsuit before satisfying the notice requirements and (2) permits the court to allow the case to proceed unless a party makes a motion to stay the case, pending compliance.

In my view, the consequence of filing a lawsuit before meeting the notice requirements is simply that, upon the motion of a party, the plaintiff may not proceed with the lawsuit without first coming into compliance. With this construction, § 40–59–840 and § 40–59–830 can be harmonized.

I disagree with the circuit court's view that § 40–59–830 applies only to those persons who mistakenly filed the action before complying with the Act. I can find nothing in the statute to support this position. Moreover, policy reasons militate against an interpretation that not only excuses, but encourages ignorance of the law and leads to incongruous results. For example, assume two parties are within 80 days of the statute of limitations. One party researches the applicable law and the other party does not. Under the circuit court's rule, if both parties thereafter filed lawsuits, without complying with the notice requirements, the party who failed to familiarize himself with the applicable law is not barred by the statute of limitations while the party who diligently inquired into the law is barred. Such cannot be the intent of the General Assembly.

For these reasons, I disagree with the circuit court's decision to strike the class action allegations due to the putative class members' failure to comply with the notice provisions. I would therefore reverse the order of the circuit court. I express no opinion as to whether a class action is compatible with the Act.[7]

Justice KITTREDGE, dissenting in a separate opinion.

I vote to affirm the order of the circuit court. The Court misconstrues a straightforward and unambiguous statutory scheme. Having created a phantom conflict in the South Carolina Notice and Opportunity to Cure Construction Dwelling Defects Act (Act), the Court resolves the purported statutory conflict in a manner that I believe is patently at odds with the intent of the South Carolina Legislature. I respectfully dissent.

The Court is called upon to construe the Act. S.C.Code Ann. §§ 40-59-810 to 860 (Supp.2009). The Act mandates that a claimant "must" serve a residential home builder with notice of a claim related to an alleged defect in the construction of a dwelling no later than ninety days "before filing the action:"

(A) In an action brought against a contractor or subcontractor arising out of the construction of a dwelling, *the claimant must, no later than ninety days before filing the action, serve a written notice of claim on the contractor.* The notice of claim must contain the following:

(1) a statement that the claimant asserts a construction defect;

(2) a description of the claim or claims in reasonable detail sufficient to determine the general nature of the construction defect; and

(3) a description of any results of the defect, if known.

The contractor or subcontractor shall advise the claimant within fifteen days of receipt of the claim if the construction

7. It appears from the Record that the circuit court did not rule on the remainder of Respondents' motion, specifically that part of the motion requesting a stay pursuant to § 40-59-830. Consequently, under my view, the court may consider this part of the motion on remand.

defect is not sufficiently stated and shall request clarification.

S.C.Code Ann. § 40–59–840 (emphasis added).

The Act specifies that within "thirty days from service of the notice," the contractor or subcontractor must notify the claimant of his "election under this section." § 40–59–850(A).[8] "Failure to respond within thirty days is deemed a denial of the claim." *Id.* "If the parties cannot settle the dispute pursuant to this article, the claimant may proceed with a civil action or other remedy provided by contract or by law." § 40–59–850(C).

The legislature further provided for a stay of an action when a "claimant files an action in court before first complying with the requirements of this article." S.C.Code § 40–59–830. ("[T]he court shall stay the action until the claimant has complied with the requirements of this article."). I would construe the stay provision in section 40–59–830 as applying only when the required pre-filing notice is not satisfied. So construed, the stay operates as a failsafe to preserve an action and avoid potential statute of limitations concerns. I part company with the majority's construction, which reads the stay provision as an invitation to willfully ignore the pre-filing notice requirement. The legislature expressed a preference for the pre-filing notice, and I do not believe our rules of statutory construction allow us to hold otherwise.[9]

I do agree with the proposition posed by the majority that, as a general rule, the Act's stay provision should be invoked when an action is filed in violation of the notice requirements

---

**8.** The Act grants certain rights to a contractor and subcontractor upon receipt of the pre-filing notice: (1) the right to request clarification of the alleged defect (§ 40–59–840); (2) the right to inspect the dwelling (§ 40–59–850); (3) the right to offer to remedy the alleged defect (§ 40–59–850); (4) the right to offer to settle the claims (§ 40–59–850); and (5) the right to deny the claim (§ 40–59–850). The majority refers to these statutory provisions as "alleged rights."

**9.** As a further expression of legislative intent to ensure the parties' compliance with the Act, the legislature directed Court Administration to "develop a designation on the Civil Action Cover Sheet which indicates whether a stay has been granted for a civil action filed pursuant to the South Carolina Notice and Opportunity to Cure Construction Defects Act." § 40–59–860(B).

of section 40–59–840, but that is not the issue before us. The precise question before the circuit court and us is whether the legislature intended to grant a court the authority to preemptively sanction the practice of willfully violating the pre-filing notice requirements of the Act. I am convinced, as was the circuit court, that the legislature intended no such result.

The section 40–59–830 stay provision should not be construed to trump or sanction a violation of the statutory preference for the section 40–59–840 pre-filing notice requirement. The legislature clearly mandated pre-litigation efforts to resolve construction defect claims. The majority acknowledges as much—"the purpose of the Act is to encourage the resolution of these types of claims without using litigation, by providing an environment that codifies a contractor/subcontractor's ability to inspect and offer a remedy or settlement." I believe the Court's interpretation of the Act encourages a claimant to intentionally ignore the pre-filing notice requirements and is in direct conflict with legislative intent. I believe the Court's interpretation of the Act renders the statutory requirement for pre-filing notice meaningless.

I make two final points. First, I disagree with the Court's finding that the legislature was not concerned about *"when"* a contractor or subcontractor actually received notice and exercised its statutory rights. (Emphasis in majority opinion). I believe the issue of "when" notice is given was important to the legislature. I believe the legislature expressed a clear preference in section 40–59–840 that the claimant "must" serve written notice on a contractor or subcontractor "before filing the action." The argument that a contractor or subcontractor may rely on these statutory rights in normal discovery, as does *"any* defendant in litigation," misses the mark. (Emphasis in majority opinion). If the legislature was not concerned about the timing issue (the question of "when"), then the Act's stated pre-filing notice requirement serves no purpose and the legislature intended to engage in a meaningless act.

Second, the majority opinion suggests that "[t]he effect of the circuit court's determination was that no class action lawsuits could be filed for claims falling under the rubric of the Right to Cure Act." The circuit court made no such

finding, nor is it the "effect" of the circuit court's ruling. The circuit court order forecloses only Appellants' attempt to create a class action lawsuit by purposely thwarting the Act's pre-filing notice mandate.

In dissenting, I would join the trial court in refusing to permit Appellants to willfully violate the pre-filing notice requirements of section 40–59–840 by adding unidentified claimants to the pending action.